UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    :
                Plaintiff,
                           :                23 Cr. 008 (WFK)

        -against-
                           :
CALVIN TABRON,
                Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## SENTENCING MEMORANDUM ON
## <u>BEHALF OF CALVIN TABRON</u>

John F. Kaley, Esq.
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, NY 10007
(212) 619-3730
*Attorney for Calvin Tabron*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,      :
                Plaintiff,

                        :            23 Cr. 008 (WFK)

        -against-

                        :

CALVIN TABRON,
                Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PRELIMINARY STATEMENT

Calvin Tabron respectfully submits this sentencing memorandum in support of his request for a non-Guidelines sentence of time served and a period of supervision, with a period of 18 month home confinement as a condition.  We appreciate that this as a "big ask."  However , in our respectful view, such a sentence is "sufficient, but not greater than necessary" to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a), that is because while receiving the privilege of bail during the pendency of this case, Calvin has accomplished everything society could have hoped to achieve by this prosecution.  He has accepted responsibility for his offense and made positive changes in his life that are worthy of consideration.

      Taking into account Mr. Tabron's life history, the continued support of his immediate and extended family which he appreciates, his commitment to living a productive law-abiding life going forward, his full acceptance of responsibility and unqualified remorse, and his documented positive and responsible conduct in the over two years (29 months) since his arrest in January 2023, while on bail release, a non-Guidelines sentence of time served and continued supervision, home confinement and guidance from the Probation Officer would be appropriate at this point in time for this defendant.

Yes, ours is a "big ask," but as Portia, in Shakespeare's "*Merchant of Venice*," in perhaps one of the most eloquent and most often-quoted verses in English literature, stated, "the quality of mercy is not strained," it is a divine attribute "like falling rain" falling from "heaven." We accept that there also must be justice, but justice without mercy is not justice. As Shakespeare noted further in Portia's soliloquy, "Mercy seasons justice." Mr. Tabron asks for mercy.

## I.  THERE IS A PLACE FOR MERCY IN OUR SYSTEM OF CRIMINAL JUSTICE

We acknowledge that the relationship between justice and mercy is a difficult legal and public policy question. In our respectful view, justice at its best is designed to restore relationships. In certain instances, of which this case is one, the restoration and continuation of Calvin's relationship with his young daughter, his family and his work are of paramount importance. While Calvin's plea to the offense is justice, mercy allows the consequences to be tailored to the situation and "mercy can strengthen justice when it restores relationships and fosters the responsibilities associated with positive relationships." Steven C. Bahls, President of Augustana College, Homily presented at Augustana College, October 21, 2003, available at https://www.augustana.edu/about-us/president/justice-and-mercy.

The virtue of mercy "is neither a redundancy of justice nor an indefensible deviation from justice." Instead, for a judge who must sentence an offender from a broad range of authorized punishments, "mercy is a guarantor of justice," a moral virtue, and urges against a truly retributive system of criminal justice. Indeed, mercy "stands between retribution and revenge" as a "check" against overly identifying with "those who have been wronged by a crime." *See* Eric L. Muller, "*Virtue Of Mercy In Criminal Sentencing,*" Seton Hall Law Review 24, Issue 1, pgs. 343-346 (1993). Mercy allows the Court to see the humanity of a person, i.e., that a person, here Calvin Tabron, son, father, brother and friend, is more than the worst thing he has ever done - - the offense conduct at issue here. There is a place for a just mercy in the administration of our

2

criminal justice system.  *See United States v. Singh*, 877 F.3d 107, 121 (2d Cir. 2017); *United States v. Kloda*, 133 F.Supp. 2d 345, 349 (S.D.N.Y. 2001) (noting that "the Guidelines may be tempered by compassion").

## II. BACKGROUND

Calvin Tabron is 27 years old.  He is the father of a now five-year old daughter and is an integral part of her life.  Calvin is more appropriately defined by the three aspects of his life that are more indicative of the true person Calvin Tabron is: family, friends and community, as we discuss more fully herein.  While Calvin cannot undo the past, he can and does look forward to a lawful and productive future.  As detailed below, Calvin has found work and has raised himself up.  He is determined to continue being a productive person as he has been while having the privilege of being on release status since shortly after his arrest.[1]

Calvin grew up in a modest home in Virginia Beach, Virginia.  He has maintained a positive and loving relationship with both of his parents, who never married.  Both parents later married others and Calvin has a good and loving relationship with their respective spouses.  He has one maternal half-sibling, age 18.  (PSR ¶¶ 51-53).  Calvin was raised under average economic circumstances where his needs were met.  (PSR ¶ 54).  Calvin graduated from high school, where he received good grades and played sports.  He started college and earned approximately 24 college credits.  He then had a need to work and he put his college career on hold to work.  (PSR ¶¶ 68-69).  He has been employed for most of his adult life and often held

---

[1]  While the SR notes that Calvin had been detained for approximately 30 days until he made bail, *see* PSR p. 1, that appears to be in error.  As reflected in the Court's records from the Eastern District of Virginia (*see* Exhibit "1" annexed hereto).  Calvin was arrested on January 11, 2023 in Virginia and released on bail in Virginia on January 19, 2023.  Thereafter, he appeared in this Court on February 9, 2023, and again was released on bail.  During the period of incarceration, he was held in the Western Tidewater Regional Jail, a local facility on contract with the United States Marshal Service, which likely explains why Probation was unable to find any record for Calvin's one-week (not one month) in custody (*see* PSR ¶ 58) prior to being released in Federal Court in Virginia on a $1,500 bond co-signed by his mother.

two jobs to help his mother make "ends meet."  Calvin pays his taxes and continues to work two jobs.  (PSR ¶¶ 72-77).  He has had some health challenges.  Recently, he has experienced some "minor depression" (PSR ¶ 62) and he had a major physical set back resulting from a collision while playing basketball, noted in the Addendum to the Presentencing Report ("ASPR").  According to the medical records provided to Probation, he suffered a serious neck injury, which required surgery, which Calvin underwent on March 4, 2025.  Post-surgery, Calvin wore a neck brace and was in considerable pain for weeks.  He is now doing better and the surgery appears to have been successful.  Calvin is back at work and goes to the gym for physical therapy.

The most important person in Calvin's life is his five-year old daughter.  He adores her, and she him.  He is with her several times per week and she stays with him whenever possible.  On days when he can, he accompanies her to school and picks her up.  He is responsible financially and contributes to her support (non-mandated).  (PSR ¶¶ 55-56).  He and the child's mother have a healthy co-parenting relationship and the child's mother is supportive of Calvin.  (PSR ¶¶ 55-56).

Since his arrest, Calvin has done everything he can to make up for his offense.  He works two jobs, has been promoted and is in line for further promotion if not incarcerated.  He coaches youth basketball and football teams and is giving back to the community.  I have seen clips of him interacting with the young team members.  Not surprisingly, the young boys take to Calvin's infectious good humor and respond well to his leadership.  In every sense of the word, he is a positive influence on their lives.  Further, the many letters of support from family, friends and co-workers who know Calvin closely attest to his many good qualities, his kindness, his commitment to family and his own personal sadness for what he has done to jeopardize everything he holds dear and close to his heart.

Calvin is described by family members, in letters annexed hereto as Exhibit "2." as

4

"respectful and hardworking," who was an "outstanding student," and "always pursued gainful employment." He has volunteered as a youth sports coach and has dedicated his time "to mentoring young boys." The letters from family also point to the fact that Calvin is a "devoted father" to his young daughter and "has always been there to support her, ensuring she has everything she needs."

The letters note further that other than for this case, Calvin "always strives to be an example of how to show responsibility or reliability in youth and family." The letters recognize that Calvin's involvement in this case "is uncharacteristic of his usual behavior." He is described further as a "loving and charismatic person" who "strives to be a helpful, dedicated father, free-spirited" person and "much-loved by many," and who is "a big part of our family," and has a "positive impact" on the family. He is described further as being "incredibly helpful and supportive, especially to the elders and women" in the family, and is "always willing to lend a hand, whether its running errands, doing household chores, or simply offering a listening ear," a person whose selflessness and willingness to go above and beyond for others are qualities that define his character." All note that Calvin's offense conduct "is completely out of character." They beg for mercy and a second chance for Calvin.

Letter from friends of Calvin, copies of which are annexed hereto as Exhibit "3," also request mercy and a second chance. They note his hard work, his "exceptional work ethic" and his "strong leadership abilities." They too are confounded by Calvin's participation in the offense. They note with admiration his role as a father to his daughter and his involvement in her life, which they recognize "is essential" for his daughter's "well-being" and for the "stability and strength" of their family. Calvin's active presence in his daughter's life is needed because of the physical challenges faced by the child's mother. (PSR ¶¶ 55-56). All also note Calvin's contribution to the community in which he lives and the youth whom he "encourages" to "pursue

their goals." The letters also note that Calvin's "positive influence" . . . has helped many young people find their paths and make better choices." Others speak of how Calvin has helped then to "grow" in their faith because Calvin takes his own faith seriously. These letters also note Calvin's growth since his arrest and how he has demonstrated "accountability for his past actions," and that Calvin "has worked tirelessly to become a better person" and note further Calvin's commitment to the community and his commitment "to being a good father." Another of Calvin's good qualities is his ability to "put a smile" on the faces of friends and "joy" in their hearts, who has inspired others to connect with God as he now has. The letters also note that Calvin is remorseful for his offense and is "committed to making more positive changes in his life." He is described by friends as "supportive, trustworthy and always willing to lend a helping hand," who lives with a "positive attitude," and an "ability to uplift those around him," who has taken his mistakes and turned "them into lessons." Despite his serious mistake in participating in the wrongdoing which has him now awaiting sentencing, his friends also note that Calvin has a sense of humor and that "laughter follows him wherever he goes" and that his "sense of humor is a gift bringing joy and light to every situation" and that he has a "way of making people feel special, valued, and uplifted."

Like his family, Calvin's friends, while fully acknowledging the wrongfulness of Calvin's offense conduct, plead for mercy and a second chance for Calvin.

People who have worked with and supervised Calvin, in letters to the Court annexed hereto as Exhibit "4," note that Calvin "is a great employee," who is "very generous" and who would "give the shirt off his back if he could," and that Calvin is showing his young daughter "everyday what a real man and father is." They too plead for mercy and a second chance for Calvin.

### III.  ECONOMIC DISASTER STRIKES AND CALVIN SUCUMBS

Ever since a teen, Calvin worked hard to help his family financially.  However, in 2023 an economic disaster hit Calvin hard.  It was a tsunami.  When a storm wiped out Calvin's car and water made its way into the engine, the insurance company refused to pay because Calvin had been one day late in making his payment.  As a result, a car he had purchased and was financing with monthly payments was repossessed.  Ultimately, the lender obtained a judgment in the amount of approximately $8,500.  Around this same time, Calvin had applied for and received the approval for housing assistance for him and his mother which allowed them to move into a new apartment.  Unfortunately, while approved, the agency ran out of money and no money was forthcoming.  Without the approved and anticipated financial assistance, Calvin and his mom fell into arrears.  When the rent was in arrears approximately $7,800, they were evicted.  Garnishments by both the car lender and the landlord took roughly 75% of Calvin's earnings leaving him about $200 per week, not enough to pay his bills.  As a result, to help pay everyday bills and expenses for himself and his daughter, Calvin started selling locally clothing items, shoes, sneakers and personal items that he had obtained or acquired over the years.

When Calvin was at his lowest, along came a "friend," Tajhai Jones, his co-defendant, who asked Calvin if he wanted to earn some money.  This led Calvin into the offense conduct.  Calvin realized then and realizes now that this was an extremely bad choice.  Sadly, at the time, only looking to help his family, Calvin never considered the consequences of his decision to engage in the offense.  It was a tragic mistake.  He was arrested, released on bail and placed on home incarceration, which allowed him to work.  He now continues on supervision and, as we have noted, has done well.  He has had solid work experiences and is in line for a significant promotion at his current job if he is allowed to remain on supervision.  Calvin does not blame

Jones for involving him in this offense.  He blames himself for not having the courage and strength at the time to say, "No."

## IV.  THE COURT SHOULD IMPOSE A NON-GUIDELINES SENTENCE OF TIME SERVED FOLLOWED BY A PERIOD OF SUPERVISED RELEASE WITH A CONDITION OF HOME CONFINEMENT

The parties in the plea agreement have agreed that the advisory Sentencing Guidelines range applicable in this case for Calvin after a three-point reduction for acceptance of responsibility and a further one-point reduction for "global" resolution of this case, at an Offense Level 26, is 63 to 78 months with a maximum term of supervised release of 3 years to follow.  Calvin has zero criminal history points and is in Criminal History Category "I."[2] Probation in the PSR has reached a slightly lower Guidelines calculation of an Offense Level 25 (PSR ¶ 35) in CHC I with an advisory sentencing range of 57-71 months.  With a further reduction of one-level for the "global" resolution, Probation would place Calvin at an offense level 24 in CHC I with an advisory sentencing range of 51-63 months.  (*See* PSR ¶ 95).

Calvin's conduct in this case was wrong and he has taken full responsibility for his actions.  Notwithstanding the difficult economic circumstances which caused his participation in the offense, Calvin acknowledges that he must take, and does take, full responsibility for the poor choice he made to become involved in the offense conduct.

By pleading guilty, Calvin has acknowledged his wrongdoing.  But rather than focus on the negatives, Calvin has re-focused his attention towards making changes in himself to

---

[2]  Calvin has had some minor traffic infractions, all of which have been resolved with fines, which had been paid.  (PSR ¶¶ 37-44).

be better in the future, and he has.  Calvin knows what he needs to do to continue on the right path and he will be successful in leading a right and proper life and in helping to support his family, which is all he wants.

In determining a suitable sentence for Calvin, it is appropriate for the Court to consider the very positive direction to which Calvin has taken his life while on bail release supervision.  Incarceration now would be a step back from what he has achieved – personal responsibility, being a true father to his five-year old daughter, and being a valued employee at his job.  He truly has established a life for himself and his family which has every indication that it will continue without wrongful detours.

Over the last almost two and one-half years on release supervision (29 months), Calvin has learned much about life, and about himself and about his commitment to his family, to his community and to himself.  He knows what he needs to do to be better and he is doing it.  In his letter to the Court, annexed hereto as Exhibit "5," Calvin expresses his deep remorse for his conduct, his hopes for the future, and the changes he has brought to his life.  He writes:

> "During that first year [of bail release], I immersed myself in self-discovery. I returned to my faith, picked up my Bible, and began a spiritual journey that helped me shift my mindset from survival to purpose. I started seeing my trials as lessons and programmed myself to rebuild my life with discipline and love instead of competition.
>
> In my second year, when I was granted curfew, I stepped back into the world determined to prove that I could be a positive force. I secured a steady job, and through relentless dedication, worked my way up from sales associate to assistant shop manager, even turning down store manager offers because I wanted to be honest about my situation. I found purpose in mentoring young athletes, coaching a youth football team to a championship victory, and dedicating my time to guiding them toward better choices.

9

My daughter became my greatest motivation. Every day, I prioritized time with her - taking her to the gym, teaching her about love, discipline, and faith, and striving to be the father she deserves. I never missed a curfew, never failed a drug test, and never wavered in my commitment to follow every condition set for me. I also never missed a Sunday of church or an opportunity to tithe, with receipts to show my devotion.

I don't share this to seek pity or paint myself as a victim. I made my choices, and I stand as a man ready to face the consequences of those actions. But I also stand as a man who has changed. This process, though painful, has given me a second chance at life- a chance to become the person I never thought I could be. I see now that I was stopped short of my plans for a reason, and that reason was to learn what it truly means to be accountable, faithful, and a leader in my community."

Calvin is a genuinely changed and more responsible person and worthy of mercy.

A.    **The Purposes of Sentencing in this Case are Satisfied by a Non-Guidelines Sentence of Time Served and Supervision**

All of which brings us now to the question: What next for Calvin Tabron? We sincerely hope that it will be a sentence of time served, supervision and home confinement so that he can continue helping and supporting his family. 18 U.S.C. § 3553(a) requires a court to impose a sentence that is reasonable, one that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." Section 3553 (a)(2) states that such purposes are:

a.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
b.    to afford adequate deterrence to criminal conduct;
c.    to protect the public from further crimes of the defendant; and
d.    to provide the defendant with needed education or vocational training medical care, or other correctional treatment in the most effective manner.

Given the totality of the circumstances discussed herein, these purposes in this case all would be satisfied by a non-Guidelines sentence of time served, supervision and home confinement.  Calvin will tell the Court at sentencing, as he has in his letter annexed hereto

as Exhibit "5," that his participation in the offense was based on poor judgment and terrible decision-making during a time in his life when he was down and economically suffering and stressed. It should not, and does not, define his character or the type of person he is or the type of life he intends to lead going forward.

He admits wholeheartedly that he was wrong for what he did, and he has taken responsibility for his involvement in the offense; he has demonstrated his intention to be a responsible and productive member of society, as he reflected in his very positive post-arrest work performance. He has tried to be better. Further, Calvin has a family and a broader community family who have remained supportive of and loyal to him. (Copies of letters submitted on Calvin's behalf are annexed hereto as Exhibits "2," "3" and "4"). He has communicated to them his remorse for his conduct and his dedication and determination to remain on a lawful course for the duration of his life. Each letter expresses the writer's comprehension of how Calvin has taken responsibility for his offense, his deep remorse, his motivation for change and the very positive things he has accomplished since his arrest and release on bail. Calvin hopes that the Court, when imposing sentence, will consider the complete picture of his life.

With respect to any need for a sentence to afford adequate deterrence to criminal conduct, we are confident that Calvin now is deterred, not only because he does not want to be incarcerated, but, even more importantly, because he realizes what impact his incarceration would have on his young daughter, on his immediate and extended family, the financial and emotional hardship it already has placed on his family, and the particular harm incarceration would impose on his daughter.

Moreover, as for the general concept of deterrence, there simply is no evidence that increases in sentence length reduce crime through deterrence.[3]  "Three National Academy of Science panels, ... reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime and Justice: A Review of Research 28-29 (2006).[4] *See also* Andrew von Hirsch, et. al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).[5]  The von Hirsch analysis, commissioned by the British Home Office, examined penalties in the United States and in several European countries.  It concluded that the "correlations between sentencing severity and crime rates ... were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."

The reason for this is that potential defendants are not generally aware of the penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not appreciate and consider sentencing consequences in the manner one might expect.  Tonry, *supra,* at 28-29.  "There is generally no significant association between perceptions of punishment levels and actual levels ... implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms" Gary Kleck, et al., *The Missing Link in General Deterrence Theory,* 43 Criminology 623 (2005).  *See also United States v. Bannister*, 786 F. Supp. 617 (E.D.N.Y.

---

[3] Of course, deterrence works in the sense that there is less crime with a criminal justice system then there would be without one. But the question here is one of "marginal deterrence," i.e., whether any particular quantum of punishment results in increased deterrence and thus less crime.

[4] This article is available on Westlaw.

[5] A summary of the von Hirsch report is available at http://members.lycos.co.uk/lawnet/SENTEN CE.PDF.

2001).  In *Bannister*, Judge Weinstein opined that specific deterrence is not accomplished by lengthy incarceration. Judge Weinstein opined further that in actuality, unnecessary and excessive prison sentences aimed at specific deterrence are likely to promote high rates of recidivism because during such prison sentences, a person is likely to lose positive and constructive family support and gain negative influences and be precluded from employment or rehabilitative opportunities upon his or her release.

We agree with the conclusions of the scholars and with Judge Weinstein that people generally do not consider in advance the consequences of their wrongdoing.  Calvin certainly did not.  Calvin now realizes fully - - in ways he had not before - - the significance of his actions and the stress and potential harm it has placed upon himself and upon his family.  Calvin, who has no prior criminal conviction, has accepted responsibility for his conduct has paid dearly for his mistake and has been deterred.[6]  It was Calvin's arrest and the aftershock of his arrest that will best deter him, not the length of a sentence.

### B.  Analysis of the 3553(a) Factors Strongly Supports a Non-Guidelines Sentence of Time Served, Supervision and a Period of Home Confinement

18 U.S.C. § 3553(a) directs a sentencing court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guidelines sentencing range and policy statements, the need to avoid unwarranted sentencing disparities among defendants involved in similar conduct with similar criminal history, and the need to provide restitution to any victim(s) of the offense.

Further, under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a

---

[6]  To the extent more is needed regarding general deterrence, the sentences already imposed on the co-defendants McCann and Jones will serve that purpose.

13

court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The directives of *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738 (2005), *United States v. Crosby,* 397, F.3d. 103 (2d Cir. 2005), and 3553(a) make clear that courts must consider all of the factors in § 3553(a), many of which the Guidelines either reject or ignore, or demand to an "extraordinary" degree. Indeed, in some cases, the Guidelines clash outright with § 3553(a)'s primary directive: "to impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing.

As the Second Circuit observed in *United States v. Jones,* 531 F.3d 163, 182 (2d Cir. 2008):

> "it is the district court's particular trust to ensure the "uniform and constant" principle of the federal sentencing tradition, specifically, that "every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," [citing] *Koon v. United States,* 518 U.S. at 113.

*Jones,* at 182.   To secure the objectives of § 3553, a district judge must fully exercise his or her proper sentencing authority.  *See Rita v. United States,* 551 U.S. 338, 127 S. Ct. 2456, 2463 (2007).

Finally, it has been observed that sentencing is not an exact science.  Rather it is a "fluid and dynamic process."  *Irizarry v. United States,* 553 U.S. 708, 715, 128 S. Ct. 2198, 2203 (2008) (citing *United States v. Vega-Santiago,* 519 F.3d 1, 4 (1st Cir. 2008) *(en banc)).*  Its aim should be to impose a sentence that is reasonable and fair and just given the facts of a particular case and the facts relative to the particular person being sentenced.  The overarching goal is to fashion a sentence that is sufficient, but not greater than necessary.  Finally on this point, it has been noted that:

> "[w]hile there are many compelling considerations in every sentencing decision, a sentencing judge must have some understanding of the diverse frailties of human kind[,] ... what it is like to be in trouble and in pain."

*United States v. Singh,* 877 F.3d at 121.  We can assure the Court that Calvin is troubled and in pain.  He fully recognizes his wrongdoing, has vowed to change and has changed as reflected in his positive conduct while on bail, and asks for mercy and a second chance.

An analysis of the § 3553(a) factors in this case, to which we now turn, fully supports the imposition of a non-Guidelines sentence of time served, supervision and a period of home confinement for Calvin.

### 1. The Nature and Circumstances of the Offense

We acknowledge that Calvin's offense conduct is serious and we recognize the harm which his offense could have caused.  Fortunately, the firearms were sold to an undercover, and none had any involvement in wrongdoing previously.  In fact, some were firearms that Calvin had owned for some time.  Others were bought for the purpose of sale to the UC.  Calvin accepts responsibility for what he did.  We point out only that Calvin did not engage in the offense conduct to become wealthy.  He misguidedly did it to survive, and even then, participated only for a brief period.  He had no stake in the offense conduct.  The money made by others was not his, and the money he received was not great.  Further, it should be pointed out that none of the firearms which Calvin sold had defaced serial numbers or had been involved in prior crimes.

### 2. The History and Characteristics of Calvin Tabron

Calvin is a loving son, father and friend.  He has accepted responsibility for his offense conduct and plans to stay a lawful course as his life moves forward.  He has zero criminal history points and is in CHC I.  Calvin hopes to continue employment and progress

his career for himself.  Furthermore, Calvin has close family and community ties that remain supportive and will help him lead a lawful life.  Calvin is described in the letters submitted quite favorably and has a support system of loving family members and friends.  *See* Exhibits "2," "3" and "4" annexed hereto.

Every letter submitted on behalf of Calvin expresses the view that Calvin is a man who is integral to the fabric of his family.  Calvin himself has written to the Court and begs for mercy.  (A copy of Calvin's letter to the Court is annexed hereto as Exhibit "5").  To say that Calvin is remorseful for his wrongdoing and for the further pain he has caused his mother and family and, if incarcerated, will cause his daughter, would be an understatement and fail to capture the true depth of his remorse and his great sadness for his actions and their effects on his family.

### 3.  The Kinds of Sentence Available

This consideration is not really a factor in this case.  A sentencing court must consider all of "the kinds of sentences available" by statute, § 3553(a)(3), even if the "kinds of sentence ...  established [by] the Guidelines" permit or encourage only prison, *see Gall v. United States*, 522 U.S. 38, 58-59, 128 S. Ct. 586, 602 & n.11 (2007).   In this case, a sentence of time served and supervision (with a period of home confinement) is sufficient but not greater than necessary for Calvin and is permitted by the wholly advisory nature of the Sentencing Guidelines.

### 4.  The Guidelines Sentencing Range and Guidelines Policy Statement

#### a.  The Guidelines Generally

As has now become Guidelines hornbook law, the Supreme Court's decision in *Booker/Fanfan* requires sentencing courts to treat the Guidelines as but one of a number of

sentencing factors set forth in 18 U.S.C. § 3553(a).  As the Supreme Court held, the now revised Sentencing Reform Act ("SRA") requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well. *See* 18 U.S.C. § 3553(a); *Booker,* 125 S. Ct. at 757.

Our view further is that the Guidelines are entitled to weight no greater than that afforded to the other factors listed in § 3553(a).  Any approach that automatically gives "heavy" weight to the Guidelines range comes perilously close to the mandatory regime found to be unconstitutionally infirm in *Booker*.

Justice Scalia explained this point in his dissent from *Booker's* remedial holding:

> [L]ogic compels the conclusion that the sentencing judge, after considering the recited factors (including the [G]uidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise - if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed - its opinion would surely say so.

*Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority thought that the Guidelines range had to be given "heavy weight," its opinion would have said so.  The remedial majority clearly understood that giving any special weight to the Guidelines range relative to the other Section 3553(a) factors would violate the Sixth Amendment.  As Justice Scalia observed in his concurring opinion in *Kimbrough v. United States,* 552 U.S. 85, 128 S. Ct. 558, 577 (2007), there can be no "thumb on the scales" in favor of Guidelines sentences. There is no presumption as to the reasonableness of the Guidelines sentencing ranges.  *See Gall,* 128 S. Ct. 596-97.  *See also United States v. Nelson,* 555 U.S. 350, 129 S. Ct. 890 (2009).

As has become apparent, now, in each case, a court must make an "individualized assessment" of the appropriate sentence "based on the facts presented" and the factors detailed in § 3553(a). *Gall,* 128 S.Ct. at 597.  *See also Simon v. United States,* 361 F. Supp. 2d 35, 40 (E.D.N.Y. 2005) (Sifton, J.) (the "Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by § 3553(a.)"). Additionally, judges "may vary [from the Guidelines ranges] based solely on policy considerations, including, disagreements with the Guidelines." *Kimbrough,* 522 U.S. at 101-02, 128 S. Ct. at 570 (internal quotations marks omitted).

In sum, as noted previously, in every case, a sentencing court must now consider all of the § 3553(a) factors, in determining a sentence that is "sufficient, but not greater than necessary" to meet the goals of sentencing and a judge "is not prohibited from including in that consideration the judge's sense of what is a fair and just sentence under all circumstances." *Jones,* 460 F.3d at 195.   And as we pointed out *supra* at pp. 2-3, "the Guidelines may be tempered by compassion."   *United States v. Kloda,* 133 F. Supp. 2d at 349.  Calvin and his family hope that he might be the recipient of the Court's fairness, compassion and mercy in this case and the terms "fairness" and "compassion" are not mutually exclusive on the facts of this case for Calvin.

> b.  The Purposes of Sentencing in this Case are Satisfied by a
> non-Guidelines Sentence Of Time Served, Supervision and
> Home Confinement

We have discussed the application of the advisory Sentencing Guidelines to Calvin, herein.  Application of those Guidelines and the relevant 18 U.S.C. 3553(a) factors to be considered by the Court permits and encourages some leniency for defendants such as Calvin. Further, to be sure, Calvin has been deterred from future wrongdoing and, from our respectful

18

view, given our own perceptions of Calvin (with whom counsel has spent considerable time) and those of his family, the need to protect the public from future crimes by Calvin should not be a concern. Calvin is hopeful that the Court will take into consideration his acceptance of responsibility, all that he has accomplished since his arrest while on supervision, and his role as a father to a young daughter. Moreover, a non-Guidelines sentence of time served and supervision (with a period of home confinement) is sufficient and in full accord with a consideration of all of the § 3553(a) factors to be applied in this case. Further, incarceration is not necessary to accomplish the purposes of sentencing and, in our respectful view, would violate the mandate of § 3553(a) that the Court impose a sentence "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

### 5. The Need to Avoid Sentencing Disparities

Imposition of the requested sentence on the factors relating to Calvin will not create any sentencing disparities, either nationally or locally, or as they relate to his co-defendants. On the contrary, imposition of a Guidelines sentence for Calvin in our respectful view would be overly punitive. Statistics compiled by the U.S. Sentencing Commission in its 2023 Sourcebook reflect the significant number of cases nationwide, in the Second Circuit and in the Eastern District in which a less than Guidelines sentence was imposed.

Specifically, as it relates to the offense in this case, the Sourcebook Tables 31 and 32 reflect that in cases utilizing Guideline § 2K2.1, as here, nationwide, roughly 50% of those cases resulted in the imposition of a sentence below the Guidelines. *See* Sourcebook Table 32 which can be found at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/2023_sourcebook.pdf. Similar statistics are

reflected in Table 31.  *Id.*  In the Second Circuit, more generally, approximately 72 percent of all sentences (including cooperators) resulted in imposition of a sentence below the Guidelines, and 55 percent of all sentences (for non-cooperating defendants) received a either downward departure or downward variance.  *See* Sourcebook Table 30.  *Id.*  In this District, more generally, roughly 77% of all sentences were below Guidelines sentences, including cooperating defendants.  *Id.*  (Copies of the Sourcebook Tables 30, 31 and 32 are annexed hereto as Exhibit "6").

Moreover, as related to his co-defendants, while sentences of incarceration were imposed on the co-defendants McCann and Jones (the defendant Minaya has yet to be sentenced), Jones had a very serious criminal history (as does Minaya), and unlike co-defendants McCann and Minaya, Calvin had no part in the very serious narcotics crimes of those defendants also charged against them in the Indictment and to which those defendants also have pleaded guilty.[7]  Given the differing personal facts and life narratives relative to each defendant, no disparity would be created were the Court to impose a non-jail sentence on Calvin in the exercise of the Court's discretion.

6.  The Need to Provide Restitution

The need to provide some amount of restitution is not a factor in this case.

7.  Reflecting the Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, Deterring Criminal Conduct, Protecting the Public and Providing Vocational Training

18 U.S.C. § 3553(a) requires courts to impose a sentence "sufficient, but not greater than

---

[7] Jones had multiple prior violent felony convictions, *see* the Court's Memorandum at case Document No. 119, pp. 5-6, and committed the instant offense while on probation from a prior narcotics conviction, which is why he solicited Calvin to purchase the firearms sold to the undercover, as he could not.  Minaya also had multiple prior violent felony convictions, had previously served significant sentences, and, according to the Government, has had serious infractions while incarcerated.  *See* Government Sentencing Submission relating to Minaya at case Document No. 130.

20

necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further offenses by the defendant and to provide the defendant with needed educational or vocational training. We have addressed each of these factors, in substance, elsewhere in and throughout this memorandum. All of these sentencing objectives can be attained by imposing a non-Guidelines sentence of time served followed by a period of supervision (with a substantial period of home confinement). Such a sentence is sufficient on the facts of this case and on the personal facts relative to Calvin. Calvin can and will succeed if given this further opportunity, as reflected in his conduct over the past 29 months while on bail release supervision. He has many admirable qualities. Calvin accepts full responsibility for his offense. He blames no one but himself. Finally, Calvin fully understands and appreciates that he is asking the Court for mercy and a second chance so that he can be the father to his young daughter whom she needs in her life.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that the Court sentence Calvin Tabron to time served with a period of supervision to follow, which includes a substantial period of home confinement.

Dated: June 18, 2025
    New York, New York

                                         Respectfully submitted,
                                         _____/s/_____
                                         John F. Kaley, Esq (JK:3598)
                                         Doar Rieck Kaley & Mack
                                         217 Broadway, Suite 707
                                         New York, NY 10007
                                         (212) 619-3730
                                         *Attorney for Defendant Calvin Tabron*

21

# EXHIBIT 1

# U.S. District Court
# Eastern District of Virginia - (Norfolk)
# CRIMINAL DOCKET FOR CASE #: 2:23-mj-00002-DEM-1

Case title: USA v. Tajhai Jones, et al.          Date Filed: 01/11/2023

Other court case number: 23-cr-00008
USDC Eastern
District of New
York

---

Assigned to: Magistrate
Judge Douglas E. Miller

**Defendant (1)**

**Calvin Tabron**                    represented by **Calvin Tabron**
PRO SE

**Keith Loren Kimball**
Office of the Federal Public
Defender
500 E. Main Street
Ste 500
Norfolk, VA 23502
757-457-0800
Fax: 757-457-0880
Email: keith_kimball@fd.org
*LEAD ATTORNEY*

*ATTORNEY TO BE
NOTICED*

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level
(Opening)**

None

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Plaintiff**

**USA**                                                  represented by **Graham Stolle**
                                                         DOJ-USAO
                                                         101 W. Main Street
                                                         Suite 8000
                                                         Norfolk, VA 23510
                                                         757-441-3575
                                                         Email:
                                                         graham.stolle2@usdoj.gov
                                                         *ATTORNEY TO BE
                                                         NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2023 | 1 | Arrest of Calvin Tabron in EDVA Norfolk on warrant out of USDC Eastern District of New York (cdod, ) (Entered: 01/11/2023) |
| 01/11/2023 | | Set Hearings as to Calvin Tabron: Initial Appearance - Rule 5(c)(3)set for 1/11/2023 at 02:30 PM in Norfolk Mag Courtroom 2 before Magistrate Judge Douglas E. Miller. (cdod, ) (Entered: 01/11/2023) |
| 01/11/2023 | | Case unsealed as to Calvin Tabron (cdod, ) (Entered: 01/11/2023) |
| 01/11/2023 | 3 | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Initial Appearance in Rule 5(c)(3) Proceedings as to Calvin Tabron held on 1/11/2023.<br><br>**Appearances**: AUSA Pete Osyf for the Government, AFPD Amanda Conner for defendant. Defendant is present in custody. Defendant advised of rights and charges. Defendant requested court appointed counsel GRANTED. Court appointed FPD and Amanda Conner, AFPD present for the hearing. Government motion for detention. Defendant chose to have proceedings in this district. Court gave oral dppa admonition and entered order. Government made oral motion to unseal the indictment GRANTED. Set Hearings as to Calvin Tabron: Detention/Removal Hearing set for 1/13/2023 at 02:00 PM in Norfolk Mag Courtroom 2 before Magistrate Judge Douglas E. Miller. Defendant remanded to USM custody. (Tape #FTR.)(cdod, ) (Entered: 01/12/2023) |
| 01/11/2023 | 4 | CJA 23 Financial Affidavit by Calvin Tabron executed and filed in open court (cdod, ) (Entered: 01/12/2023) |

| 01/11/2023 | 5 | ORDER - This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116-182, 134 Stat. 894 (Oct. 21, 2020), the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including vacating a conviction or disciplinary action against the prosecution. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to Calvin Tabron. Signed by Magistrate Judge Douglas E. Miller on 01/11/2023. (cdod, ) (Entered: 01/12/2023) |
| 01/11/2023 | 8 | Temporary Detention Order as to Calvin Tabron executed and filed in open court. Signed by Magistrate Judge Douglas E. Miller on 01/11/2023. (cdod, ) (Entered: 01/12/2023) |
| 01/12/2023 | 10 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED - government and defense counsel) as to Calvin Tabron. (Gill, Tara) (Entered: 01/12/2023) |
| 01/12/2023 | 11 | MOTION for Detention *Memo of Law and Proffer of Evidence* by USA as to Calvin Tabron. (Attachments: # 1 Exhibit)(Stolle, Graham) (Main Document 11 replaced on 1/13/2023) (dbra, ). (Entered: 01/12/2023) |

| 01/13/2023 | 15 | Minute Entry for proceedings held before Magistrate Judge Douglas E. Miller:Detention Hearing as to Calvin Tabron held on 1/13/2023.<br><br>**Appearances**: AUSA Graham Stolle for the Government, AFPD Keith Kimball for defendant Defendant is present in custody. Defendant waived identity hearing. Detention hearing held. Proffer and argument presented. Court ordered defendant released on $1500 unsecured bond with conditions to include electronic home monitoring. Order of release stayed on government motion until close of business 1/17/23 in order for government to appeal the release order. Defendant remanded to USM custody. (Tape #FTR.)(cdod, ) (Main Document 15 replaced on 1/18/2023) (cdod, ). (Entered: 01/17/2023) |
|---|---|---|
| 01/14/2023 | 14 | NOTICE OF ATTORNEY APPEARANCE: Keith Loren Kimball appearing for Calvin Tabron (Kimball, Keith) (Entered: 01/14/2023) |
| 01/17/2023 | 18 | Letter Motion *to Lift Stay of Order of Release* by USA as to Calvin Tabron. (Stolle, Graham) (Entered: 01/17/2023) |
| 01/17/2023 | 19 | ORDER granting 18 Letter Motion as to Calvin Tabron (1). Signed by Magistrate Judge Douglas E. Miller on 01/17/2023. (cdod, ) (Entered: 01/17/2023) |
| 01/19/2023 | 22 | ORDER Setting Conditions of Release as to Calvin Tabron (1) $1,500 unsecured. Signed by Magistrate Judge Douglas E. Miller on 1/18/2023 and filed on 1/19/2023. (btit) (Entered: 01/19/2023) |
| 01/19/2023 | 23 | Unsecured Bond Entered as to Calvin Tabron in amount of $1,500. (btit) (Entered: 01/19/2023) |

**PACER Service Center**

# EXHIBIT 2

Calvin Tabron
5417 Balfor Drive
Virginia Beach, VA, 23464
1/29/2025

The Honorable Judge William F. Kuntz, II
New York Eastern District Court
Brooklyn, New York

**RE: Sentencing Consideration for Calvin Tabron Jr.**

I am writing to you as the father of Calvin Tabron Jr., my only son, who has never been in trouble before this unfortunate situation. As a parent yourself, I am sure you understand that young people make mistakes. However, this situation was beyond anything I could have ever imagined for my son, and it has been incredibly difficult for our family. I respectfully ask for your understanding and leniency in his sentencing.

Calvin has always been a respectful and hardworking young man. He was an outstanding student, played sports, participated in talent shows, and was even crowned homecoming king at his prestigious high school, where he maintained a 3.0 GPA. He has never been incarcerated before, and this entire experience has been a painful lesson for him. If I had known about this situation earlier, I would have done everything in my power to prevent it. Unfortunately, he found himself caught up with the wrong people, and I truly believe this mistake does not define who he is.

When I learned about this situation, I was completely shocked. I know my son was coerced into his involvement and, due to his naivety, did not fully understand the actions of his accomplices. As a father and role model, I have worked hard to set a strong example, and in my 50 years, I have never been incarcerated. I ask you to consider this when determining his sentence. I understand that he must face consequences, but I firmly believe that he does not deserve the severity of the punishment he is facing.

Since being placed on an ankle monitor, Calvin has remained trouble-free and has demonstrated his commitment to bettering himself. He has worked two jobs—one at Take 5 Oil Change, where he was promoted to assistant manager, and another at Foot Locker. In addition, he has volunteered as a youth basketball coach, dedicating his time to mentoring young boys. More importantly, he is a devoted father to his young daughter. I cannot imagine her growing up without him during these crucial years when she needs him the most. He has always been there to support her, ensuring she has everything she needs, from school to birthdays and beyond.

This incident has already hindered his future aspirations. The same week he was placed on an ankle monitor, he was offered a position with the Merchant Seaman—a career opportunity he had worked tirelessly to secure. Had things gone differently, he would now be traveling the world, building a better future for himself and his daughter.

I know my son has learned from this mistake. He is not someone who seeks trouble, and I am confident that, given a second chance, he will prove himself as a productive and responsible

member of society. I respectfully ask for your leniency in his sentencing so that he may have the opportunity to turn this experience into a lesson that shapes his future for the better.

Thank you for reading my pain as a father and for your time and consideration.

**Sincerely,**
Calvin Tabron

Bernadette Early
1909 Eastover court
Virginia Beach, VA, 23464
1/29/2025

The Honorable Judge William F. Kuntz, II
New York Eastern District Court
Brooklyn, New York

RE: Sentencing Consideration for Calvin Tabron Jr.

Dear Judge William, F. Kuntz, II,

I am writing to you as the aunt of Calvin Tabron Jr. to humbly request leniency in his upcoming sentencing. Calvin is a young man who, despite making a regrettable decision, has shown himself to be a hardworking, responsible, and family-oriented individual.

Calvin had never been in trouble with the law before this incident. He was raised to value integrity and has consistently demonstrated that throughout his life. He graduated high school with an excellent GPA, has always pursued gainful employment, and has always been committed to bettering himself. I personally helped Calvin achieve his dream of becoming a merchant mariner, a path he pursued not only to build a career but to provide a stable future for his 4-year-old daughter, whom he loves and supports deeply.

Unfortunately, Calvin became entangled with individuals who exploited his inexperience and good nature. I truly believe that he did not fully understand the gravity of his actions at the time. However, I can confidently say that this experience has been a profound wake-up call for him. For the past two years, while on probation, Calvin has displayed unwavering commitment to turning his life around. He has learned the importance of making sound decisions, maintaining a law-abiding life, and being a role model for his daughter.

Your Honor, I respectfully ask that you consider Calvin's lack of prior criminal history, his dedication to self-improvement, and his responsibilities as a father when determining his sentence. Calvin is not only remorseful but also determined to use this experience as an opportunity for personal growth. A second chance would allow him to continue contributing to his family and society in a meaningful way and hopefully still being able to become a merchant seaman to provide a great life for himself and his daughter.

Thank you for taking the time to read my letter and for considering my request for leniency. I have no doubt that Calvin will prove himself worthy of this opportunity and emerge from this situation stronger and wiser.

Sincerely,

Bernadette Early
(757)404-9011

Carena Reid

708 Huntly Drive

Chesapeake, VA 23320

threadgc@aol.com

7575374618

February 14, 2025

Dear Honorable Judge

I am writing to provide a character reference for Calvin Tabron, the person who is appearing before your court. I have known him for 27 years because he is my nephew, and I am confident in his integrity, responsibility, and character. In my experience Calvin Tabron has worked hard to be accountable at work, home, coaching the youth, and taking care of his child. Calvin adhered to the rules the law under house arrest, followed guidelines of curfew, as well as the rules at my home consistently for one year.

He approaches old/new challenges with his utmost diligence and always strives to be an example of how to show responsibility or reliability in youth and family. I believe that Calvin's current actions and decisions are guided by strong family morals and values.

I am aware of the charges he is facing and believe that this situation is uncharacteristic of his usual behavior. I am confident that Calvin deeply regrets his involvement in this matter and is dedicated to learning from this experience and becoming a better member of society.

Based on my knowledge of Calvin's character and his contributions to the community, I respectfully request that the court consider his positive attribute and potential for rehabilitation when making his sentencing.

Thank you for considering my perspective.

Sincerely,


Carena

Pastor Rolitha Smith
131 Houston Avenue
Norfolk, VA 23320
February 14, 2025

To whom it may concern:

I am writing this letter for my nephew, Calvin Deijon Tabron, who is subject to being charged in the recent New York Gun Trafficking Case. As an Aunt, I would never imagine him being in this situation. I am asking for your and God's grace and mercy upon my nephew.

From what I've seen Calvin is honest , hardworking, and responsible. Whenever someone needs help, he is there, and ready to lend a helping hand. He has grown into a true gentleman and taught the value of respect to others. I've seen him being really dedicated to his daughter, family, church and employment.   I am sure he would not have done any of this had he not been influenced.

Besides that, Calvin is also involved in helping out in our community. He does things like coach basketball for 10-year-old boys to keep them off the street. He has always been a hard worker, loving and charismatic person towards his friends and associates.

Calvin is well-known by many friends, coworkers, and family.  He strives to be a helpful, dedicated father, free-spirited and is a much-loved person by many.

I would sincerely request you to look into this character letter before passing any verdict and he would never commit to such a thing in his life.

Yours faithfully,

Pastor Rolitha Smith
Passionate Prayer Believers Ministries

Dear Judge,

I am writing this letter on behalf of my cousin, Calvin Tabron Jr, who is currently involved in a case before your court. I have known Calvin my whole life and I can confidently say that they are a person of strong character, integrity, and responsibility.

Throughout the years, I have witnessed Calvin to demonstrate qualities such as kindness, dedication, and a commitment to their family and community. He is very well with his child, he volunteers with youth and sports. He is a big part of our family.

I understand the seriousness of the matter before the court, and I do not intend to excuse any actions taken on anything that he has done. However, I sincerely believe that Calvin has learned from this experience and is committed to making positive changes. He meets curfew, comes to court on time, no trouble since being on house arrest as well.

I respectfully ask the court to consider Calvin character and the positive impact they have on those around them when making a decision in this case. If given the opportunity, I am confident he will continue to be a productive and responsible member of society.

Thank you for your time and consideration. God bless you all!

Sincerely,

Amaya McPherson.

Starr Robinson
3608 Crofts Pride Drive
Virginia Beach, VA 23453
srob723@cox.net
757-692-9409


February 8, 2025


The Honorable William F. Kuntz
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201


Dear Judge Kuntz,

I am writing this letter to provide a character reference for my younger cousin, Calvin Tabron, Jr., who has recently been involved in a federal offense. As a family member, I have known Calvin (CJ) for his entire life, and I can attest to his character and the positive impact he has had on our family. CJ is a remarkable young man who has always been known for his kindness, generosity, and sense of humor. It was truly unbelievable for all of us to learn about his involvement in this crime, as it is entirely uncharacteristic of the person we know and love.

Calvin Tabron, Jr. is the comic relief of our family, always bringing laughter and joy to any gathering. He has a special gift for making people feel at ease and brightening even the darkest of days. His ability to uplift those around him is a testament to his compassionate and caring nature. In addition to his sense of humor, CJ is incredibly helpful and supportive, especially to the elders and women in our family. He is always willing to lend a hand, whether it's running errands, doing household chores, or simply offering a listening ear. His selflessness and willingness to go above and beyond for others are qualities that define his character.

Furthermore, CJ is a deeply giving individual who would give you the shirt off his back if you needed it. He comes from a praying, God-fearing family, and his actions are guided by strong moral and ethical principles.

This offense is completely out of character for CJ, and our entire family is struggling to understand how this could have happened. We believe that this incident does not reflect who he truly is, and we hope that the court will take into consideration his history of positive contributions to our family.

Thank you for your time and consideration in reading this letter. I wholeheartedly vouch for CJ's character and respectfully request that you show leniency in his case. He is a good person who made a mistake, and I believe that with the right guidance and support, he can learn from this experience and continue to be a valuable member of society.

Sincerely,

Starr Robinson

# EXHIBIT 3

Latoya Jackson

100 Fairwind Drive

Chesapeake, Va

Latoyajackson49@gmail.com

(757)831-9564

9/27/2024


Dear Your Honor, I am writing this letter to offer my perspective on the character of Mr. Tabron, who has been a close and trusted friend of mine for many years. I understand the seriousness of the matter before the court, and I hope that my insight into his life, character, and responsibilities will provide a fuller picture of who he is as a person.

Mr. Tabron is currently employed as a supervisor at Take 5 oil Change,  where he has consistently demonstrated an exceptional work ethic and strong leadership abilities. His role requires him to interact with a wide range of people, and he does so with professionalism, respect, and kindness. His customer service is remarkable, and his thorough knowledge of the job showcases his sense of responsibility and commitment as an employee. Outside of work, Mr. Tabron is an amazing father to his daughter. He actively participates in her life by picking her up from school, and providing financial, emotional, and physical support. His dedication to fatherhood is clear, and it serves as a strong example of what being a parent means in today's world.

His presence in his daughter's life is not only essential for her well-being but also for the stability and strength of their family. Your Honor, I truly believe that Mr. Tabron has shown, through his actions and responsibilities, that he is able to contribute positively to society. He is not a danger to others, but rather a person of strong character who is working hard to build a better future for himself and his family. It is my sincere belief that keeping individuals like Mr. Tabron from being incarcerated is important, as he is actively demonstrating that he can fulfill his responsibilities as a father, employee, and member of the community. I respectfully ask that you consider the positive impact Mr. Tabron has on his daughter and those around him when making your decision. I am confident that, given the opportunity, he will continue to make positive contributions to society. Thank you for taking the time to consider my letter!

Sincerely,

Latoya Jackson

Victoria Spain

Vspain1991@gmail.com

09-27-2024

Dear Judge Kuntz,

I hope this letter finds you well. I am writing to you regarding Calvin, who is currently before you in court. As a member of this community, I feel compelled to share my perspective on Calvin and the positive impact he has had on all of us.

Calvin is a remarkable individual who has dedicated himself to serving our community in numerous ways. He has volunteered countless hours to various local organizations, including The VA Assassin's . His commitment to helping others and his ability to inspire those around him is truly commendable.

One of the most significant contributions Calvin has made was taking the VA Assassin's to the 8U championship! This effort not only brought our community together but also provided essential support to those in need. Many families and individuals have benefited from his kindness and dedication.

Beyond his volunteer work, Calvin is a role model for our youth. He consistently encourages them to pursue their goals and supports them in their endeavors. His positive influence has helped many young people find their paths and make better choices.

I understand that the court must consider all aspects of a person's actions, but I urge you to take into account Calvin's long-standing commitment to our community and the countless lives he has touched. His character and contributions should be recognized as evidence of his true nature.

Let's not undermine the fact Calvin is a FATHER to a precious little girl name            who depends on her father being present in her life as she grows up. Calvin also is the highlight at family events from his comedy to his singing. CJ never falls short of his talent. Please have mercy upon a young man who made a mistake and has learned from his past encounters.

Thank you for considering my perspective. I believe that Calvin is a valuable asset to our community, and I hope this letter provides insight into the person he truly is.

Sincerely,

Victoria Spain

Vspain1991@gmail.com

757-376-0474

February 14, 2025

I wanted to speak on Calvin & mines friendship. Calvin exemplifies what it is to be a true friend. I am currently in school & I work full time at Apex & with that comes not really having time to do much of anything else. Calvin has made it his mission to reach out to me & come to visit me at work whenever he can. He has shown so much growth in the year & a half that I have known him. He has taught me to grow in my faith because he takes his faith serious. He calls & texts & just prays over me & my situation. I have learned to do the same for him. Calvin is the real definition of a strong & deserving person.

Ariana Ellison

February 14, 2025

To Whom It May Concern:

I am writing this letter on behalf of Calvin Tabron, who I have had the privilege of knowing for about a year. During this time, I have witnessed Calvin undergo remarkable personal growth and demonstrate accountability for his past actions. I believe his journey reflects his true character, one that is resilient, determined, and deeply committed to bettering himself and his community.

Calvin has consistently shown a strong sense of responsibility and integrity. He has taken full accountability for the choices that led to his legal troubles, and since then, he has worked tirelessly to become a better person. I have seen firsthand how he has transformed into someone who not only owns his mistakes but actively seeks to make amends and grow from them.

In addition to his personal development, Calvin has become an outstanding member of the community. He has volunteered his time to coaching kids basketball, demonstrating his genuine desire to give back and make a positive impact. His infectious personality has allowed him to connect with others and inspire them to be better as well. He consistently treats those around him with respect, kindness, and generosity, creating a supportive environment wherever he goes.

One of the qualities that stands out most about Calvin is his commitment to being a good father. He has demonstrated an unwavering dedication to his daughter, ensuring that she has the love, guidance, and support she needs to thrive. His devotion to her well-being is evident in the time, care, and effort he puts into being an involved and loving parent.

I have no doubt Calvin will continue to grow and contribute positively to society. He has proven that he is capable of learning from his past and using those lessons to become a better person, friend, and father.

Sincerely,

Erika Ricks

Imani Heggins

02/10/2025

To whom it may concern,

I am writing to offer my support for Calvin Dei'jon Tabron, whom I have had the privilege of knowing for just under a year. We met at a field day through a mutual friend and from the very first moment, we instantly connected. Since then, Calvin has become a close friend, attending family barbecues and holiday events, and I have had the opportunity to witness his remarkable character firsthand.

In the time I've known him, Calvin has faced numerous hardships, yet he has never let those struggles define him. Despite the challenges, he continues to smile, work hard, and provide for his family. He has remained a constant source of positivity and support for those around him. Calvin's resilience is something that truly stands out to me—he's one of the most resilient people I know. He has faced adversity head-on and continues to show up for his family and friends with unwavering strength and determination. Over the past year, I've seen Calvin grow in ways that are both inspiring and admirable. He has embraced the opportunity to better himself, and it's clear that becoming a better person is a goal he takes seriously. He is intentional about making positive changes in his life and uses his experiences to motivate himself to be more responsible, compassionate, and driven.

Moreover, Calvin is always looking for ways to give back and support his community. His commitment to self-improvement is matched by his genuine desire to make the world around him a better place. Being around Calvin has had a positive impact not only on me but on everyone who has the privilege of knowing him. His energy and outlook on life are infectious, making those around him want to be better people.

Thank you for considering this letter. I truly believe that Calvin is a person of great integrity, resilience, and potential. I have no doubt that he will continue to make positive contributions to his family, community, and the people who are lucky enough to know him.

Sincerely,

Imani Heggins

February 14, 2024

To whom this may concern,

I am writing in support of Calvin Tabron. Calvin is not only a friend but a great person who extends himself to the community in a variety of different ways. I originally met him at the gym and we eventually became gym partners pushing each other's strength to new limits as we bonded over common interests such as sports. Once I graduated from my Master's program at Norfolk State University, I struggled to find a job opportunity and Calvin saw to it that I had a job to provide for my 5 month pregnant girlfriend and myself, as he was the assistant manager at the local Take5 Oil Change. Throughout my duration working there he made sure that whatever I needed from advice on how to navigate tough situations, the technicalities of the job, motivation, or just a good laugh, Calvin was always there to support me. Calvin also led by example on how to always be there in support of your kids no matter the circumstance just by his undying support and love for his daughter. I currently have my own 4-month-old son and still think about Calvin as one of those standup people who led by example to be a great dad and a pillar in the community. When learning that Calvin needed some support, I jumped at the opportunity as I reflected on all of the times that he helped me out. I hope that this letter finds you in great spirits and even better health. Thank you for your time and consideration and I look forward to seeing a favorable outcome for Calvin.

Very Respectfully,
Imani Bey, M.A.

February 14, 2025

To whom it may concern,

Calvin has always been an amazing friend. Kind hearted, motivated and a man of integrity. Despite having to write this letter today, I am confident that he will continue to be an upright character in the community.

Jhenelle

Victoria Clay
Chesapeake, VA
Victoriaclay93@gmail.com
2/13/2025

Re: Character Reference for Calvin Tabron

To whom it may concern,

I am writing this letter on behalf of Calvin Tabron to speak to his outstanding character and the positive impact he has on those around him. I have had the privilege of knowing Calvin for six months and in that time, I have consistently witnessed his dedication to his family, community, and personal growth.

Calvin is a devoted father who takes great pride in providing for and guiding his daughter. His love and commitment to his family are evident in the time and effort he puts into being a role model for them. He understands the importance of responsibility and structure, ensuring that he adheres to all requirements, including his curfew. He takes this obligation seriously and respects the guidelines set before him.

Beyond his role as a father, Calvin is deeply involved in volunteering his time to help the youth in basketball. He is always willing to lend a helping hand, such as mentoring young individuals . His positive attitude and encouraging spirit make him a great influence on those who look up to him.

Calvin is known for his kindness and reliability. He is always in a great mood, bringing a sense of warmth and encouragement wherever he goes. His willingness to help others, no matter the circumstance, speaks volumes about his character. Whether assisting a family member, offering support to a friend, or simply being a positive presence, Calvin embodies the qualities of a genuinely good person.

I hope this letter provides insight into the type of person Calvin is, one who values integrity, family, and community. I sincerely ask that you consider his strong character, dedication, and the positive contributions he continues to make. Thank you for your time and consideration.

Sincerely,

Victoria Clay

# Letter for Clemecy: Calvin Tabron

Taylor Ballinger, MHT, Behavioral Health
CCMA, Bon Secours Mercy Health
Maryview Medical Center
3636 High St,
Portsmouth, VA 23707                    February 13, 2025

Dear honorable Judge Kuntz,

My name is Taylor, a Certified Behavioral Health Specialist, and CCMA with Bon Secours Mercy Health
at Maryview Hospital. I'm writing to advocate for Calvin Tabron, whom Im enamored due to genuine
spirit and compassion for his community. I have no personal or professional connection with Mr. Tabron.
That is to say he has made a significant impact to the Hampton Roads and I've know of him for quite
some time. Neighboring communities and cities are hoping there is reprieve or mercy that can be granted
for Mr. Tabron.

From what I observe of Mr. Tabron, he is an absolute wonderful father to his daughter. His little girl
shouldn't have to experience losing touch with a active father who is her literal twin. They share a bond
that is not seen often, and it would be disheartening to see him apart from her. He always makes sure this
little girl has everything she needs, is there at all times by her side, and an active participant in her
schooling. Even after having such a traumatic accident that inhibited movement in his arms and neck, he
still preserved to provide for his daughter and to make sure his matters are handled.

In addition he has many connections to community groups that he has made such a huge impact. He
makes sure his family, his village, the city has nothing to worry about by being there for his people
emotional, spiritually, and at times financially. He's the true definition of a work horse.

I was saddened by the news of Mr.Tabrons case but I've been praying that the legal teams and you, Mr.
Kuntz are able to come to a resolution that considers the impact it would make on his daughter, family,
and community. Everyone has the capacity of change and to learn from their mistakes. Working in
Behavioral health I've seen patients due a true 180 that didn't require being confined. Mr. Tabron has
adamantly made it clear he is a changed man. We all see it, and we hope you Mr. Kuntz are able to see it
to.

Thank you for your time,
Taylor Ballinger, MHT, Behavioral Health
CCMA, Bon Secours Mercy Health
Maryview Medical Center
3636 High St,
Portsmouth, VA 23707

Dear Your Honor,

For the past year of knowing him, Calvin has become the most essential piece of our friend group. He is always there to put a smile on your face and joy in our hearts. Calvin is a God-fearing man, and his words are so powerful when he speaks. When he gives advice or shares his perspective you can feel how deeply his words aligns with his character because he speaks from the heart and his experience. I value his friendship deeply and appreciate his light in my life.

One thing that makes my heart smile is to see the bond he has with his daughter,        . Nothing is stronger than a bond between a father and daughter. She lights up his world and he is an amazing father to her. He is loving, kind, and patient with her and it is a beautiful sight to witness her being raised by him.

Calvin does not let his past define him, it has shaped and molded him into the man he is today. He is a mentor to the youth and serves his community as coach to a young men's basketball team. He exemplifies the definition of a father, and he is a true friend. I ask when you read this letter you take in my words wholeheartedly and it paints a picture of how I see him through your eyes.

Thank you for taking the time out the read this letter,

Sincerely,

Dakia Lloyd

Kaycharnae26@gmail.com

*Dakia Lloyd*

Dear Judge Kuntz,

I am writing to provide a character reference for my friend, Calvin. Although I have known him for a little less than a year, in that time, he has proven himself to be a responsible, hardworking man, and an extremely devoted father. He is someone who genuinely cares about the people around him and is always willing to go lend a hand. If it is within his means to help someone, he does so without hesitation.

Beyond his dependability, Calvin has a strong personal connection with God. Through his own faith, he has inspired me to reconnect with my spirituality and get back on the right path. His encouragement and guidance have been meaningful in my life, and I know he has positively impacted others as well.

I understand the seriousness of the matter before the court, but I truly believe Calvin is a good man who strives to do right by his family, friends, and community. I ask that you consider his character and the positive influence he has on those around him when making your decision.

Thank you for your time and consideration. Please feel free to contact me if you need any further information.

Sincerely,

Solange Evans

910-818-5869

solange.evans@gmail.com

February 13, 2025

Hi my name is robert cheek jr i just wanted to state that mr calvin tabron is a amazing person he's a great dad its never been a day where calvin has not tried or give his best to help better the people around him his character is far beyond anybodys ive seen. he's active in his community as a basketball coach for young kids

And he is always available or makes himself available to guve a hrlping hand to others he's by far one of the best people ive met and an awesome person to be around. He uplifts the people around him and pushes then to be great in life

February 13, 2025

Mr.Calvin Tabron is not only a great father , he is a big brother to a lot of loved ones out here.
Mr.Tabron is known to be a genuine person and most importantly he is a man trying to follow
the path of the light god has set for him . His love is unconditional and unmatched .Calvin is
social and unique in his own way.

Nick Lewis

February 13, 2025

Dear honorable Judge Kuntz,

I am writing this letter for my close friend, Calvin Tabron. I would sincerely like to vouch for the good character of Calvin. He has grown to contribute to the betterment of himself and the community that surrounds him. But more than anything, he is a very, very dedicated and proud father.

I humbly ask that you take into consideration the positive qualities that define Calvin. He is not only remorseful for his actions but is also committed to making more positive changes in his life. I believe in his ability to learn from this experience and continue making meaningful contributions to our community.

 In closing, thank you for your attention to this letter and I am available should you have any questions for me.


Respectfully submitted,

Victoria White

February 13, 2025

Dear Judge Kuntz

I hope this letter finds you well. I am writing to you in support of my dear friend, Calvin Tabron. I have known Calvin for almost a year and I can confidently say that he is one of the most genuine, caring, and responsible individuals I have ever had the privilege of knowing.

Calvin is a dedicated father who is deeply involved in his daughter life and strives to be a positive role model for her. I have witnessed firsthand how much effort he puts into raising his daughter with love, patience, and guidance. His commitment to providing her with a stable, nurturing environment speaks to the depth of his character.

In addition to being an outstanding father, Calvin is a loyal and trustworthy friend. He is always there when anyone needs help, whether it's offering a listening ear or stepping in to assist with a problem. His integrity and kindness shine through in every interaction, and I know many people, myself included, who have greatly benefited from his friendship.

Calvin is also a thoughtful and level-headed individual. He has a calm demeanor and is someone who approaches challenges with a clear, reasoned perspective. His ability to remain composed under pressure and make well-informed decisions is something I admire deeply.

In conclusion, I believe Calvin is a person of great character, and I hope that his good qualities will be taken into account as you consider his case. I trust that he will continue to learn from any mistakes and continue to be the responsible and caring person he has always been. Thank you for your time and consideration.

Sincerely, Natalia Collier

To Whom It May Concern,

I am honored to write this character reference for my dear friend, Calvin Tabron. I have had the privilege of knowing Calvin for about 11 years, and during this time, I have witnessed first hand his kindness, integrity, and unwavering dedication—not only as a friend but also as a devoted father.

As a friend, Calvin is someone you can always count on. He is supportive, trustworthy, and always willing to lend a helping hand. His positive attitude and ability to uplift those around him make him a truly special person. Whether in challenging times or moments of celebration, he has been a constant source of encouragement and loyalty.

Beyond being a great friend, Calvin is an outstanding father. His love and commitment to his daughter is evident in everything he does. He is patient, nurturing, and deeply involved in her life, always ensuring she has the guidance and support she needs to grow and succeed. His ability to balance responsibility with warmth and understanding is truly admirable.

Calvin Tabron exemplifies what it means to be a person of strong character. His dedication to his family, his kindness toward others, and his unwavering sense of responsibility make him a role model in every aspect of life. I have no doubt that he will continue to be a positive influence in the lives of those around him.

If you require any further information, please do not hesitate to contact me.

Sincerely,

Kandace Williams

Kandacew9514@gmail.com

7573206582

To whom it may concern:

My name is Imani Williams and I am a friend of Calvin Tabron. I am writing on behalf of his character as I have had the pleasure of witnessing his progress in the last year.

Calvin is a dedicated father and a committed friend. When he is not at work at either of his two jobs, he spends his free time making a beautiful life for his daughter. I was blessed to witness him incorporate her in many activities such as basketball, in which he coaches for, roller skating, and cooking at home. He is creating memories with her that will last a life time. Outside of time spent with his daughter, he has also coordinated a Sunday morning football team that brings together young men from all different backgrounds and allows them to enjoy a fun childhood sport.

We all have a past that sometimes are not the brightest, but I can tell Calvin has decided his time to take his mistakes and turn them into lessons. I am confident to say that he will be a excellent citizen moving forward and will contribute greatly to our community.

Iman Williams

February 13, 2025

To whom it may concern:

Hello , I'm reaching out on behalf of

Calvin Tabron. He is one of the most resilient individuals I have ever met. He is Hard working, motivated & such a well rounded man. Since he has become a father I've seen so much more growth and personal determination. Truly a man of god and family.

Teajja More

February 13, 2025

Hello I'm writing this email in regards to Calvin Tabrin sentencing I don't know the contents of his case or charges I write this in hopes that you take it into consideration of his case and sentencing I've not only known him for a short period of time but in that short period of time I've known him to be the best father person and friend overall he's caring and will always find a way to help others him and his daughter relationship are of top tier in this day and time you don't see a present and consistent father in his child's life the father of my child has passed away sadly but he gives hope in me that one day I'll find someone as amazing as him to father my children as well he Gives hope in a world so cruel I'm a firm beliver of everybody deserves a second chance to prove they have grown and have become a better person in a way I just hope you give him his again I don't know the context of his case or changes I only know the man and that man Is an amazing father in more ways then one an amazing human I just hope you give him the chance to show you and the world who he is a little while longer

Milagros Rodriguez

February 13, 2025


Good morning my name is Andy Ayat. I know Mr. Tabron over five years great father first of all good man good friend. I'm writing this because I truly believe he deserve a second chance to be out and take care of his business his daughter family. He deserve a second chance 🙏


Andy Ayat

February 12, 2025

Dear Judge

I hope this letter finds you well in, Calvin Tabron. I am writing to you on the half of Calvin Tabron & would like to take this opportunity to provide some context about his character, commitment, responsibilities, particularly as a father & person overall.

First and foremost, Calvin always strived to live life with integrity and respect for others. Always pushing positivity not only for himself but others to community.  Even with seriousness of his situation he still continues to push positivity & not lose faith or hope of his situation or life overall.

From my perspective of Calvin outside of pushing positivity the most important aspects of his life is his role as a father to his daughter. He cares deeply about her well-being and has always made it a priority to be there for her, both emotionally and financially. He takes his responsibilities as a parent very seriously and has consistently worked to provide a stable and loving environment for her.

In addition to his responsibilities as a father, Calvin also dedicated to fulfilling his obligations in other areas of life. Calvin maintained steady employment and has always been diligent in meeting financial responsibilities. I believe that Calvin actions reflect commitment to being a responsible and contributing member of society.

I kindly ask for your understanding and leniency in this matter. I know this situation overall was an eye opener for Calvin, & I know Calvin is determined to learn from this experience and continue to make positive contributions to the community and, most importantly, to his daughter's life.

Thank you for taking the time to read my letter. I am hopeful for a favorable outcome and am committed to proving that Calvin is deserving of your trust and consideration.

Zeede Haze

February 12, 2025

Hello my name is Izeh Harold and I am writing on behalf of Calvin Tabron. I've known Calvin for quite some time. We met as teens in the gym and He is a very positive person and uplifting figure. He loves people and especially children. Every time I've ever seen him in public he is doing something positive or just staying focused on being the best he can be. I have nieces and nephews that play sports And I always see him there at the kids games coaching youth teams, uplifting children and teaching them how to be the best version of themselves. I hope this message finds you well and Thank you for considering my testament.

Kind Regards,

Izeh Harold

September 27, 2024

To whom it may concern,

I need you to know, and hope that you take the time to value my words when I say this, Mr. Calvin Deijon Tabron, Jr. is a wholehearted soul that's gotten dealt a hand of contrarious cards just like the rest of us. Yet, his resilience, passion for positivity, humanitarianism, and all-around humor has pushed him past the likings of everyday people. Before you think these words are being pulled out of thin air, I want to give a little back story on myself. I want to give light on a real-life example of how Calvin removed everything that was going on with him at the time to make me feel like I was seen, I was heard, and I was loved. I had to bury someone that I was in love with just 5 months ago. From escaping a mentally and physically abusive relationship just last year, to losing someone that finally made me smile again, I wanted to give up. I was at my lowest and I couldn't understand life anymore. Now, Calvin has been through some of the worst of the worst, some far greater than what I've been dealt. However, when life is crashing down on someone he loves, he makes you feel like you can fight back. By just being himself, without any ulterior motives, he restores confidence in others; and he does this off the fact that his internal power, and his internal grit, is infectious. It's not overwhelming, it's flat-out inspiring. For this very reason, he became my saving grace. I don't even think he knows the magnitude of how helpful he's been, but how could he? Calvin is humble. He knows, he understands, he learns, and he makes do. I find myself, often than not, referring on his words and the way that he maneuvers through life, to motivate myself. Ever since high school, but surely over these past two years, I've watched Calvin transform into one of God's favorites. He is an outmatched, competitive, heartwarming, charismatic, and prayerful father, son, brother, nephew, and friend. I told him to his face a while ago that even though we're the same age, I want to be like him when I grow up, when I mature. He is a young master. Calvin honorably plays the hand he was dealt and he's winning the game. Life doesn't decide if you win or lose, your heart and soul does. If you are not whole, if you are not righteous within, you've lost. Calvin will never lose; his game is far from over, and I pray you are a facilitating piece.

Justice A. Hill

Devoted friend

February 12, 2025

To whom this may concern,

Hello my name is Juwan Gaines, I'm writing this letter to inform you on the type of person Calvin Tabron is. Mr. Tabron is a great inspiration to the community and the world. Calvin has been a major pillar and a beacon of light by showing his strength when times get tough. He's been down and I've personally watched him be able to accept hardship and day by day persevere as though nothing has happened. He has been a great father to his child(ren), Calvin has done a marvelous job as a single father. Calvin Tabron has even shown light and strength on social media. He gives inspiration and encouragement to many of his followers, family, and friends. Over all Calvin Tabron is a man of honor whom a lot of people respect and love. Calvin would give the shirt of his back to the less fortunate and has done that. Thank you for this time and i pray you have seen a glimpse of the good Calvin has been in the community and the world by my letter.

Thank you, Juwan Gaines

February 12, 2025


To whom it may concern,


Calvin Tabron aka CJ is a very hard-working, loving, caring, creative, honest, generous and authentic person. The list could go on to describe his charismatic qualities. Anytime I have ever been in a situation where I needed some type of help whether it was money, advice, or somebody to talk to he was there for me. He coaches my son's basketball team. My son looks up to him and takes notes on the advice and information he provides to him at practice. CJ is an amazing father to his daughter. Nothing comes before her and everything he does is for her. His integrity is unmatched. I don't have one negative thing to say about him. CJ is an incredible person, a dedicated, father, mentor, and friend who consistently shows up for the people in his life his generosity, integrity leadership not only impact those closest to him But also set a strong example for the next generation people like him make a lasting difference in their communities.

Queen Lex

February 12, 2025

To whom this may concern,

I have known Cj for many years now. The individual growth that he has had is beautiful to watch. He is a great dad who definitely makes his child a priority. He is very active and present with his family, friends, and coaching as well.

Brianna Johnson

February 12, 2025

Your Honor,

I am writing this letter on behalf of Calvin Tabron to express my support for his character.

Calvin is a truly admirable human being. Since I have known him, I have witnessed his kindness, dedication, and unwavering commitment as a father. He embodies perseverance and demonstrates that one's past does not define their future. His hard work and positive influence on those around him speak volumes about his character.

I respectfully ask that you consider these qualities as you make your decision

Sincerely, Mark W.

February 7, 2025

To Whom It May Concern:

I am proud and honored to write this letter of support on behalf of Calvin Tabron. I have known Calvin personally since July 2024; although short in time, it has been impactful. I can attest to his unwavering commitment to his family and friends and to helping others in his community. Calvin is a successful leader who is passionate and trustworthy, and he gives unselfishly of his time, talents, and resources to help improve the lives of others from all walks of life. His passion and commitment to our youth are evident as he dedicates his time to coaching eight- and nine-year-olds at his local recreation center. As a coach, mentor, and leader amongst his peers, his character these past six months has been impeccable. He is friendly and considerate and known as being loyal and supportive amongst his peer group.

From the moment I met Calvin, I witnessed his dedication to his spiritual beliefs and intense devotion to his family, especially his daughter. Calvin possesses many characteristics that align with being a great father. He is compassionate, patient, and encouraging, all while leading with love and discipline. His daughter is very fortunate to have him look up to.

As the mother of two adult children, I often find myself still actively involved in their lives and the lives of their friends. Just as I did when they were growing up, I am committed to ensuring that they surround themselves with individuals who are productive citizens. Had it not been for Calvin's honesty and consideration for those around him, I would not have imagined that he, like so many other young men with a brief slip in judgment, was involved in a situation that could affect his future. His vibrant, outgoing personality is infectious, and his contagious enthusiasm uplifts everyone around him.

Calvin has made an indelible mark on my family, and his dedication and commitment to his personal and professional growth have been truly inspiring. His unwavering work ethic and passion for self-improvement set an example for everyone around him. Whether through his kindness, wisdom, or determination, Calvin continuously motivates those he interacts with. His ability to balance ambition with compassion has strengthened his journey and the lives of those fortunate enough to know him.

Sincerely,

Donna R. Heggins

February 12, 2025

Calvin Tabron: A Devoted Father, Community Leader, and Joyful Spirit

Calvin Tabron is the kind of person who makes the world a better place—not just for his family, but for everyone lucky enough to know him. He is a loving and devoted father to his beautiful daughter, always guiding her with wisdom, kindness, and unconditional love. She is his greatest pride, and he works hard every day to set an example of strength, integrity, and compassion.

But Calvin's impact doesn't stop at home. He extends his kindness to the entire community, dedicating his time as a recreational basketball coach. Through coaching, he teaches kids more than just the game—he instills confidence, teamwork, and the value of perseverance. He's not just shaping players; he's shaping young lives, giving them the encouragement and guidance they need to succeed both on and off the court.

And of course, anyone who knows Calvin knows that laughter follows him wherever he goes. His sense of humor is a gift, bringing joy and light to every situation. Whether he's cracking jokes, cheering on his team, or simply being there for a friend in need, Calvin has a way of making people feel special, valued, and uplifted.

Calvin Tabron is more than just a great father and coach—he's a role model, a mentor, and a true force of positivity in the lives of so many. His dedication to his daughter, his players, and his community is a testament to the incredible man he is. The world is lucky to have him, and those who know him are truly blessed.

DaShawn Dowdy

**EXHIBIT 4**

February 14, 2025

Good Afternoon,

I am sending this email to briefly express the type of person that Calvin is. Calvin is a light in a dark room. It's so easy for him to put a smile on anyone's face no matter what mood they are already in. He's very generous and will give the shirt off his back if he could. He's a great employee which I had the pleasure of working with and managing. He's an AMAZING father to his daughter. He means the world to her and is showing her every day what a real man and father is. Calvin is one of a kind and I'm so glad that we crossed paths! He doesn't even know how much I admire him and his perseverance. This is who I see and think of when I hear the name Calvin Tabron and I hope you will too.

With love,
Marketa Hurdle

**Character letter to judge asking for leniency**

From
Sade Lanier
2118 county dr Trlr F10
Petersburg va , 23803

Date: 02/13/25

Dear Judge Kuntz

I am writing this letter on behalf of my friend , Calvin Tabron I want to bring to your attention the kind of person he is despite the recent actions he has faced in these recent times. I have known Calvin for the last eight years as a friend and coworker. he is truly a gentleman, a great father, and a very hard worker and has always been true to his word. I am very well aware of the charges he is currently facing and the consequences he may be receiving, but given the circumstances I would like to plead for leniency on him, he is a well mannered gentleman as well as one of the best single fathers I have ever seen not only have I seen him take accountability for his current actions and change his ways as well as his surroundings I do believe you will not have to worry about him repeating the same actions again. I do pray that you take this letter into consideration and allow him some leniency before you place your verdict . I can promise that Calvin we'll make amends for his actions and in the future, you will see his good work, truly pay off

Thank you ,

Sade Lanier

February 5, 2025

Good morning my name is Jamaica DeBerry n am writing to you this letter as character witness for Calvin Tabron Jr better known to me as CJ. I've known cj most of or almost his whole life he comes from a good family whom I've know his father since the 10th grade in high school n we currently or on the same crew at our job. CJ is a model citizen he mentor the youth at our church he also coached youth basketball n football in the area n he also trains my 12 year old son which he looks up to cj. He is a hard working young man n a devoted father to his daughter n a loving son n a pillar in the community

Jamaica DeBerry

**EXHIBIT 5**

Letter to Judge William F. Kuntz, II:


Your Honor,


My name is Calvin Tabron, and I come before you with the deepest humility and respect as I prepare to face the consequences of my actions. I want to express my sincere remorse for my involvement in trafficking firearms and take full responsibility for the decisions that led me to this point.


In January 2023, I was incarcerated and later released to home detention with an ankle monitor. That first year of confinement to my home, only permitted to work and return directly back, forced me to confront the reality of my situation. I had no choice but to reflect on the choices I made, accept my faults, and understand how my impulsive actions — born out of financial struggle and a desperate need to provide for my family — led me down this path. I've come to understand that no amount of money is worth compromising my freedom or my integrity, and that true provision for my daughter comes not just from material things but from being present and setting an example of resilience and growth.


During that first year, I immersed myself in self-discovery. I returned to my faith, picked up my Bible, and began a spiritual journey that helped me shift my mindset from survival to purpose. I started seeing my trials as lessons and programmed myself to rebuild my life with discipline and love instead of competition.


In my second year, when I was granted curfew, I stepped back into the world determined to prove that I could be a positive force. I secured a steady job, and through relentless dedication, worked my way up from sales associate to assistant shop manager, even turning down store manager offers because I wanted to be honest about my situation. I found purpose in mentoring young athletes, coaching a youth football team to a championship victory, and dedicating my time to guiding them toward better choices.


My daughter became my greatest motivation. Every day, I prioritized time with her — taking her to the gym, teaching her about love, discipline, and faith, and striving to be the father she deserves. I never missed a curfew, never failed a drug test, and never wavered in my

commitment to follow every condition set for me. I also never missed a Sunday of church or an opportunity to tithe, with receipts to show my devotion.

I don't share this to seek pity or paint myself as a victim. I made my choices, and I stand as a man ready to face the consequences of those actions. But I also stand as a man who has changed. This process, though painful, has given me a second chance at life — a chance to become the person I never thought I could be. I see now that I was stopped short of my plans for a reason, and that reason was to learn what it truly means to be accountable, faithful, and a leader in my community.

I humbly ask for your mercy, not to erase my mistakes, but to allow me the opportunity to continue the path of redemption I've started. I promise to use my story to inspire others, to prevent even one person from making the same choices I did, and to show my daughter that her father is not defined by his past, but by the man he chose to become through it.

Thank you for considering my words, Your Honor.

With deepest respect and sincerity,

Calvin Tabron

# EXHIBIT 6

Table 30

## SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE
## IN EACH CIRCUIT AND DISTRICT[1]
### Fiscal Year 2023

| CIRCUIT District | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 63,812 | 27,087 | 42.4 | 314 | 0.5 | 6,499 | 10.2 | 6,363 | 10.0 | 2,421 | 3.8 | 21,128 | 33.1 |
| | | | | | | | | | | | | | |
| D.C. CIRCUIT | 503 | 231 | 45.9 | 12 | 2.4 | 37 | 7.4 | 0 | 0.0 | 21 | 4.2 | 202 | 40.2 |
| District of Columbia | 503 | 231 | 45.9 | 12 | 2.4 | 37 | 7.4 | 0 | 0.0 | 21 | 4.2 | 202 | 40.2 |
| | | | | | | | | | | | | | |
| FIRST CIRCUIT | 1,947 | 712 | 36.6 | 6 | 0.3 | 178 | 9.1 | 1 | 0.1 | 126 | 6.5 | 924 | 47.5 |
| Maine | 116 | 28 | 24.1 | 1 | 0.9 | 24 | 20.7 | 0 | 0.0 | 2 | 1.7 | 61 | 52.6 |
| Massachusetts | 477 | 93 | 19.5 | 1 | 0.2 | 62 | 13.0 | 1 | 0.2 | 43 | 9.0 | 277 | 58.1 |
| New Hampshire | 158 | 33 | 20.9 | 0 | 0.0 | 20 | 12.7 | 0 | 0.0 | 8 | 5.1 | 97 | 61.4 |
| Puerto Rico | 1,090 | 541 | 49.6 | 4 | 0.4 | 67 | 6.1 | 0 | 0.0 | 69 | 6.3 | 409 | 37.5 |
| Rhode Island | 106 | 17 | 16.0 | 0 | 0.0 | 5 | 4.7 | 0 | 0.0 | 4 | 3.8 | 80 | 75.5 |
| | | | | | | | | | | | | | |
| SECOND CIRCUIT | 3,204 | 882 | 27.5 | 10 | 0.3 | 521 | 16.3 | 5 | 0.2 | 102 | 3.2 | 1,684 | 52.6 |
| Connecticut | 355 | 78 | 22.0 | 1 | 0.3 | 64 | 18.0 | 0 | 0.0 | 41 | 11.5 | 171 | 48.2 |
| New York | | | | | | | | | | | | | |
| Eastern | 709 | 159 | 22.4 | 1 | 0.1 | 138 | 19.5 | 2 | 0.3 | 36 | 5.1 | 373 | 52.6 |
| Northern | 453 | 238 | 52.5 | 3 | 0.7 | 87 | 19.2 | 2 | 0.4 | 11 | 2.4 | 112 | 24.7 |
| Southern | 1,142 | 224 | 19.6 | 1 | 0.1 | 124 | 10.9 | 1 | 0.1 | 11 | 1.0 | 781 | 68.4 |
| Western | 410 | 153 | 37.3 | 3 | 0.7 | 82 | 20.0 | 0 | 0.0 | 1 | 0.2 | 171 | 41.7 |
| Vermont | 135 | 30 | 22.2 | 1 | 0.7 | 26 | 19.3 | 0 | 0.0 | 2 | 1.5 | 76 | 56.3 |
| | | | | | | | | | | | | | |
| THIRD CIRCUIT | 2,358 | 862 | 36.6 | 9 | 0.4 | 432 | 18.3 | 8 | 0.3 | 51 | 2.2 | 996 | 42.2 |
| Delaware | 104 | 48 | 46.2 | 1 | 1.0 | 11 | 10.6 | 6 | 5.8 | 6 | 5.8 | 32 | 30.8 |
| New Jersey | 722 | 237 | 32.8 | 1 | 0.1 | 133 | 18.4 | 0 | 0.0 | 9 | 1.2 | 342 | 47.4 |
| Pennsylvania | | | | | | | | | | | | | |
| Eastern | 526 | 145 | 27.6 | 0 | 0.0 | 149 | 28.3 | 0 | 0.0 | 8 | 1.5 | 224 | 42.6 |
| Middle | 409 | 176 | 43.0 | 4 | 1.0 | 71 | 17.4 | 2 | 0.5 | 13 | 3.2 | 143 | 35.0 |
| Western | 530 | 206 | 38.9 | 2 | 0.4 | 60 | 11.3 | 0 | 0.0 | 13 | 2.5 | 249 | 47.0 |
| Virgin Islands | 67 | 50 | 74.6 | 1 | 1.5 | 8 | 11.9 | 0 | 0.0 | 2 | 3.0 | 6 | 9.0 |
| | | | | | | | | | | | | | |
| FOURTH CIRCUIT | 4,263 | 1,789 | 42.0 | 30 | 0.7 | 718 | 16.8 | 4 | 0.1 | 91 | 2.1 | 1,631 | 38.3 |
| Maryland | 484 | 120 | 24.8 | 4 | 0.8 | 99 | 20.5 | 2 | 0.4 | 26 | 5.4 | 233 | 48.1 |
| North Carolina | | | | | | | | | | | | | |
| Eastern | 825 | 434 | 52.6 | 10 | 1.2 | 240 | 29.1 | 0 | 0.0 | 5 | 0.6 | 136 | 16.5 |
| Middle | 326 | 137 | 42.0 | 4 | 1.2 | 17 | 5.2 | 0 | 0.0 | 5 | 1.5 | 163 | 50.0 |
| Western | 362 | 166 | 45.9 | 1 | 0.3 | 61 | 16.9 | 0 | 0.0 | 3 | 0.8 | 131 | 36.2 |
| South Carolina | 644 | 190 | 29.5 | 0 | 0.0 | 173 | 26.9 | 0 | 0.0 | 12 | 1.9 | 269 | 41.8 |
| Virginia | | | | | | | | | | | | | |
| Eastern | 877 | 430 | 49.0 | 7 | 0.8 | 33 | 3.8 | 2 | 0.2 | 38 | 4.3 | 367 | 41.8 |
| Western | 209 | 65 | 31.1 | 3 | 1.4 | 49 | 23.4 | 0 | 0.0 | 0 | 0.0 | 92 | 44.0 |
| West Virginia | | | | | | | | | | | | | |
| Northern | 310 | 150 | 48.4 | 1 | 0.3 | 28 | 9.0 | 0 | 0.0 | 1 | 0.3 | 130 | 41.9 |
| Southern | 226 | 97 | 42.9 | 0 | 0.0 | 18 | 8.0 | 0 | 0.0 | 1 | 0.4 | 110 | 48.7 |

## Table 30 (cont.)

| CIRCUIT | | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | VARIANCE | |
| District | TOTAL | N | % | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | | |
| | | | | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FIFTH CIRCUIT** | **17,480** | **11,170** | **63.9** | **68** | **0.4** | **1,079** | **6.2** | **917** | **5.2** | **588** | **3.4** | **3,658** | **20.9** |
| Louisiana | | | | | | | | | | | | | |
| Eastern | 331 | 168 | 50.8 | 9 | 2.7 | 66 | 19.9 | 0 | 0.0 | 5 | 1.5 | 83 | 25.1 |
| Middle | 96 | 49 | 51.0 | 0 | 0.0 | 18 | 18.8 | 0 | 0.0 | 1 | 1.0 | 28 | 29.2 |
| Western | 324 | 224 | 69.1 | 2 | 0.6 | 24 | 7.4 | 0 | 0.0 | 3 | 0.9 | 71 | 21.9 |
| Mississippi | | | | | | | | | | | | | |
| Northern | 157 | 61 | 38.9 | 2 | 1.3 | 35 | 22.3 | 0 | 0.0 | 0 | 0.0 | 59 | 37.6 |
| Southern | 372 | 232 | 62.4 | 2 | 0.5 | 48 | 12.9 | 0 | 0.0 | 3 | 0.8 | 87 | 23.4 |
| Texas | | | | | | | | | | | | | |
| Eastern | 714 | 421 | 59.0 | 9 | 1.3 | 33 | 4.6 | 0 | 0.0 | 10 | 1.4 | 241 | 33.8 |
| Northern | 1,557 | 931 | 59.8 | 10 | 0.6 | 148 | 9.5 | 0 | 0.0 | 13 | 0.8 | 455 | 29.2 |
| Southern | 6,422 | 3,417 | 53.2 | 31 | 0.5 | 408 | 6.4 | 886 | 13.8 | 449 | 7.0 | 1,231 | 19.2 |
| Western | 7,507 | 5,667 | 75.5 | 3 | 0.0 | 299 | 4.0 | 31 | 0.4 | 104 | 1.4 | 1,403 | 18.7 |
| | | | | | | | | | | | | | |
| **SIXTH CIRCUIT** | **4,586** | **1,684** | **36.7** | **19** | **0.4** | **822** | **17.9** | **10** | **0.2** | **179** | **3.9** | **1,872** | **40.8** |
| Kentucky | | | | | | | | | | | | | |
| Eastern | 444 | 220 | 49.5 | 3 | 0.7 | 90 | 20.3 | 0 | 0.0 | 6 | 1.4 | 125 | 28.2 |
| Western | 337 | 96 | 28.5 | 1 | 0.3 | 90 | 26.7 | 7 | 2.1 | 24 | 7.1 | 119 | 35.3 |
| Michigan | | | | | | | | | | | | | |
| Eastern | 694 | 225 | 32.4 | 1 | 0.1 | 65 | 9.4 | 0 | 0.0 | 14 | 2.0 | 389 | 56.1 |
| Western | 239 | 119 | 49.8 | 3 | 1.3 | 40 | 16.7 | 0 | 0.0 | 6 | 2.5 | 71 | 29.7 |
| Ohio | | | | | | | | | | | | | |
| Northern | 880 | 345 | 39.2 | 2 | 0.2 | 171 | 19.4 | 1 | 0.1 | 21 | 2.4 | 340 | 38.6 |
| Southern | 621 | 141 | 22.7 | 3 | 0.5 | 132 | 21.3 | 1 | 0.2 | 90 | 14.5 | 254 | 40.9 |
| Tennessee | | | | | | | | | | | | | |
| Eastern | 640 | 293 | 45.8 | 5 | 0.8 | 138 | 21.6 | 0 | 0.0 | 9 | 1.4 | 195 | 30.5 |
| Middle | 276 | 70 | 25.4 | 1 | 0.4 | 29 | 10.5 | 1 | 0.4 | 4 | 1.4 | 171 | 62.0 |
| Western | 455 | 175 | 38.5 | 0 | 0.0 | 67 | 14.7 | 0 | 0.0 | 5 | 1.1 | 208 | 45.7 |
| | | | | | | | | | | | | | |
| **SEVENTH CIRCUIT** | **2,267** | **755** | **33.3** | **14** | **0.6** | **231** | **10.2** | **1** | **0.0** | **80** | **3.5** | **1,186** | **52.3** |
| Illinois | | | | | | | | | | | | | |
| Central | 260 | 77 | 29.6 | 0 | 0.0 | 32 | 12.3 | 0 | 0.0 | 3 | 1.2 | 148 | 56.9 |
| Northern | 617 | 182 | 29.5 | 2 | 0.3 | 53 | 8.6 | 1 | 0.2 | 19 | 3.1 | 360 | 58.3 |
| Southern | 261 | 132 | 50.6 | 9 | 3.4 | 35 | 13.4 | 0 | 0.0 | 14 | 5.4 | 71 | 27.2 |
| Indiana | | | | | | | | | | | | | |
| Northern | 262 | 126 | 48.1 | 0 | 0.0 | 33 | 12.6 | 0 | 0.0 | 1 | 0.4 | 102 | 38.9 |
| Southern | 393 | 153 | 38.9 | 0 | 0.0 | 49 | 12.5 | 0 | 0.0 | 2 | 0.5 | 189 | 48.1 |
| Wisconsin | | | | | | | | | | | | | |
| Eastern | 328 | 50 | 15.2 | 2 | 0.6 | 23 | 7.0 | 0 | 0.0 | 4 | 1.2 | 249 | 75.9 |
| Western | 146 | 35 | 24.0 | 1 | 0.7 | 6 | 4.1 | 0 | 0.0 | 37 | 25.3 | 67 | 45.9 |
| | | | | | | | | | | | | | |
| **EIGHTH CIRCUIT** | **5,141** | **2,070** | **40.3** | **32** | **0.6** | **696** | **13.5** | **23** | **0.4** | **114** | **2.2** | **2,206** | **42.9** |
| Arkansas | | | | | | | | | | | | | |
| Eastern | 548 | 251 | 45.8 | 1 | 0.2 | 65 | 11.9 | 0 | 0.0 | 3 | 0.5 | 228 | 41.6 |
| Western | 177 | 82 | 46.3 | 0 | 0.0 | 20 | 11.3 | 0 | 0.0 | 1 | 0.6 | 74 | 41.8 |
| Iowa | | | | | | | | | | | | | |
| Northern | 338 | 169 | 50.0 | 11 | 3.3 | 63 | 18.6 | 0 | 0.0 | 5 | 1.5 | 90 | 26.6 |
| Southern | 440 | 146 | 33.2 | 2 | 0.5 | 66 | 15.0 | 0 | 0.0 | 4 | 0.9 | 222 | 50.5 |
| Minnesota | 353 | 96 | 27.2 | 1 | 0.3 | 47 | 13.3 | 2 | 0.6 | 25 | 7.1 | 182 | 51.6 |
| Missouri | | | | | | | | | | | | | |
| Eastern | 953 | 389 | 40.8 | 2 | 0.2 | 95 | 10.0 | 0 | 0.0 | 24 | 2.5 | 443 | 46.5 |
| Western | 840 | 280 | 33.3 | 1 | 0.1 | 154 | 18.3 | 0 | 0.0 | 13 | 1.5 | 392 | 46.7 |
| Nebraska | 567 | 252 | 44.4 | 0 | 0.0 | 20 | 3.5 | 17 | 3.0 | 4 | 0.7 | 274 | 48.3 |
| North Dakota | 413 | 139 | 33.7 | 6 | 1.5 | 160 | 38.7 | 3 | 0.7 | 3 | 0.7 | 102 | 24.7 |
| South Dakota | 512 | 266 | 52.0 | 8 | 1.6 | 6 | 1.2 | 1 | 0.2 | 32 | 6.3 | 199 | 38.9 |

## Table 30 (cont.)

| CIRCUIT | | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | | |
| District | TOTAL | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **NINTH CIRCUIT** | **12,091** | **2,723** | **22.5** | **48** | **0.4** | **895** | **7.4** | **4,728** | **39.1** | **640** | **5.3** | **3,057** | **25.3** |
| Alaska | 177 | 55 | 31.1 | 0 | 0.0 | 31 | 17.5 | 0 | 0.0 | 7 | 4.0 | 84 | 47.5 |
| Arizona | 4,776 | 1,253 | 26.2 | 16 | 0.3 | 104 | 2.2 | 2,748 | 57.5 | 65 | 1.4 | 590 | 12.4 |
| California | | | | | | | | | | | | | |
| Central | 941 | 247 | 26.2 | 8 | 0.9 | 123 | 13.1 | 12 | 1.3 | 68 | 7.2 | 483 | 51.3 |
| Eastern | 383 | 158 | 41.3 | 0 | 0.0 | 76 | 19.8 | 3 | 0.8 | 7 | 1.8 | 139 | 36.3 |
| Northern | 384 | 45 | 11.7 | 3 | 0.8 | 48 | 12.5 | 2 | 0.5 | 31 | 8.1 | 255 | 66.4 |
| Southern | 3,184 | 339 | 10.6 | 13 | 0.4 | 172 | 5.4 | 1,906 | 59.9 | 428 | 13.4 | 326 | 10.2 |
| Guam | 26 | 10 | 38.5 | 0 | 0.0 | 8 | 30.8 | 0 | 0.0 | 0 | 0.0 | 8 | 30.8 |
| Hawaii | 119 | 32 | 26.9 | 0 | 0.0 | 37 | 31.1 | 0 | 0.0 | 1 | 0.8 | 49 | 41.2 |
| Idaho | 291 | 98 | 33.7 | 0 | 0.0 | 62 | 21.3 | 12 | 4.1 | 9 | 3.1 | 110 | 37.8 |
| Montana | 368 | 113 | 30.7 | 1 | 0.3 | 79 | 21.5 | 0 | 0.0 | 8 | 2.2 | 167 | 45.4 |
| Nevada | 360 | 63 | 17.5 | 1 | 0.3 | 16 | 4.4 | 41 | 11.4 | 9 | 2.5 | 230 | 63.9 |
| Northern Mariana Islands | 25 | 19 | 76.0 | 0 | 0.0 | 3 | 12.0 | 0 | 0.0 | 0 | 0.0 | 3 | 12.0 |
| Oregon | 409 | 66 | 16.1 | 2 | 0.5 | 78 | 19.1 | 0 | 0.0 | 2 | 0.5 | 261 | 63.8 |
| Washington | | | | | | | | | | | | | |
| Eastern | 289 | 103 | 35.6 | 4 | 1.4 | 46 | 15.9 | 4 | 1.4 | 3 | 1.0 | 129 | 44.6 |
| Western | 359 | 122 | 34.0 | 0 | 0.0 | 12 | 3.3 | 0 | 0.0 | 2 | 0.6 | 223 | 62.1 |
| | | | | | | | | | | | | | |
| **TENTH CIRCUIT** | **4,835** | **1,811** | **37.5** | **42** | **0.9** | **272** | **5.6** | **664** | **13.7** | **356** | **7.4** | **1,690** | **35.0** |
| Colorado | 328 | 97 | 29.6 | 2 | 0.6 | 66 | 20.1 | 20 | 6.1 | 4 | 1.2 | 139 | 42.4 |
| Kansas | 330 | 149 | 45.2 | 2 | 0.6 | 45 | 13.6 | 2 | 0.6 | 6 | 1.8 | 126 | 38.2 |
| New Mexico | 2,003 | 701 | 35.0 | 21 | 1.0 | 50 | 2.5 | 535 | 26.7 | 208 | 10.4 | 488 | 24.4 |
| Oklahoma | | | | | | | | | | | | | |
| Eastern | 213 | 136 | 63.8 | 3 | 1.4 | 8 | 3.8 | 0 | 0.0 | 5 | 2.3 | 61 | 28.6 |
| Northern | 398 | 207 | 52.0 | 10 | 2.5 | 31 | 7.8 | 0 | 0.0 | 100 | 25.1 | 50 | 12.6 |
| Western | 669 | 355 | 53.1 | 2 | 0.3 | 21 | 3.1 | 1 | 0.1 | 6 | 0.9 | 284 | 42.5 |
| Utah | 757 | 135 | 17.8 | 0 | 0.0 | 40 | 5.3 | 102 | 13.5 | 22 | 2.9 | 458 | 60.5 |
| Wyoming | 137 | 31 | 22.6 | 2 | 1.5 | 11 | 8.0 | 4 | 2.9 | 5 | 3.6 | 84 | 61.3 |
| | | | | | | | | | | | | | |
| **ELEVENTH CIRCUIT** | **5,137** | **2,398** | **46.7** | **24** | **0.5** | **618** | **12.0** | **2** | **0.0** | **73** | **1.4** | **2,022** | **39.4** |
| Alabama | | | | | | | | | | | | | |
| Middle | 218 | 79 | 36.2 | 0 | 0.0 | 29 | 13.3 | 0 | 0.0 | 5 | 2.3 | 105 | 48.2 |
| Northern | 405 | 228 | 56.3 | 1 | 0.2 | 54 | 13.3 | 0 | 0.0 | 6 | 1.5 | 116 | 28.6 |
| Southern | 308 | 154 | 50.0 | 6 | 1.9 | 36 | 11.7 | 1 | 0.3 | 8 | 2.6 | 103 | 33.4 |
| Florida | | | | | | | | | | | | | |
| Middle | 1,102 | 448 | 40.7 | 3 | 0.3 | 162 | 14.7 | 0 | 0.0 | 9 | 0.8 | 480 | 43.6 |
| Northern | 254 | 100 | 39.4 | 1 | 0.4 | 61 | 24.0 | 1 | 0.4 | 5 | 2.0 | 86 | 33.9 |
| Southern | 1,514 | 745 | 49.2 | 4 | 0.3 | 108 | 7.1 | 0 | 0.0 | 16 | 1.1 | 641 | 42.3 |
| Georgia | | | | | | | | | | | | | |
| Middle | 380 | 248 | 65.3 | 2 | 0.5 | 38 | 10.0 | 0 | 0.0 | 3 | 0.8 | 89 | 23.4 |
| Northern | 585 | 165 | 28.2 | 3 | 0.5 | 62 | 10.6 | 0 | 0.0 | 19 | 3.2 | 336 | 57.4 |
| Southern | 371 | 231 | 62.3 | 4 | 1.1 | 68 | 18.3 | 0 | 0.0 | 2 | 0.5 | 66 | 17.8 |

[†] Of the 64,124 cases, 312 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range. Descriptions of variables used in this table are provided in Appendix A.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

Table 31

**SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE
BY TYPE OF CRIME[1]
Fiscal Year 2023**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 63,812 | 27,087 | 42.4 | 314 | 0.5 | 6,499 | 10.2 | 6,363 | 10.0 | 2,421 | 3.8 | 21,128 | 33.1 |
| Administration of Justice | 643 | 295 | 45.9 | 14 | 2.2 | 29 | 4.5 | 2 | 0.3 | 30 | 4.7 | 273 | 42.5 |
| Antitrust | 18 | 4 | 22.2 | 0 | 0.0 | 8 | 44.4 | 0 | 0.0 | 2 | 11.1 | 4 | 22.2 |
| Arson | 106 | 48 | 45.3 | 6 | 5.7 | 14 | 13.2 | 0 | 0.0 | 5 | 4.7 | 33 | 31.1 |
| Assault | 841 | 379 | 45.1 | 17 | 2.0 | 37 | 4.4 | 1 | 0.1 | 66 | 7.8 | 341 | 40.5 |
| Bribery/Corruption | 366 | 85 | 23.2 | 0 | 0.0 | 123 | 33.6 | 0 | 0.0 | 12 | 3.3 | 146 | 39.9 |
| Burglary/Trespass | 83 | 54 | 65.1 | 2 | 2.4 | 3 | 3.6 | 1 | 1.2 | 2 | 2.4 | 21 | 25.3 |
| Child Pornography | 1,408 | 484 | 34.4 | 4 | 0.3 | 32 | 2.3 | 2 | 0.1 | 47 | 3.3 | 839 | 59.6 |
| Commercialized Vice | 84 | 22 | 26.2 | 4 | 4.8 | 12 | 14.3 | 0 | 0.0 | 8 | 9.5 | 38 | 45.2 |
| Drug Possession | 124 | 111 | 89.5 | 1 | 0.8 | 1 | 0.8 | 0 | 0.0 | 0 | 0.0 | 11 | 8.9 |
| Drug Trafficking | 18,999 | 5,060 | 26.6 | 59 | 0.3 | 3,947 | 20.8 | 1,238 | 6.5 | 883 | 4.6 | 7,812 | 41.1 |
| Environmental | 146 | 86 | 58.9 | 0 | 0.0 | 16 | 11.0 | 0 | 0.0 | 3 | 2.1 | 41 | 28.1 |
| Extortion/Racketeering | 129 | 29 | 22.5 | 0 | 0.0 | 17 | 13.2 | 1 | 0.8 | 7 | 5.4 | 75 | 58.1 |
| Firearms | 8,820 | 4,438 | 50.3 | 76 | 0.9 | 457 | 5.2 | 13 | 0.1 | 290 | 3.3 | 3,546 | 40.2 |
| Food and Drug | 53 | 29 | 54.7 | 0 | 0.0 | 1 | 1.9 | 0 | 0.0 | 2 | 3.8 | 21 | 39.6 |
| Forgery/Counter/Copyright | 112 | 42 | 37.5 | 0 | 0.0 | 16 | 14.3 | 0 | 0.0 | 4 | 3.6 | 50 | 44.6 |
| Fraud/Theft/Embezzlement | 5,173 | 2,033 | 39.3 | 22 | 0.4 | 760 | 14.7 | 3 | 0.1 | 147 | 2.8 | 2,208 | 42.7 |
| Immigration | 19,140 | 10,769 | 56.3 | 39 | 0.2 | 192 | 1.0 | 5,076 | 26.5 | 572 | 3.0 | 2,492 | 13.0 |
| Individual Rights | 110 | 37 | 33.6 | 0 | 0.0 | 16 | 14.5 | 0 | 0.0 | 6 | 5.5 | 51 | 46.4 |
| Kidnapping | 151 | 47 | 31.1 | 3 | 2.0 | 44 | 29.1 | 0 | 0.0 | 15 | 9.9 | 42 | 27.8 |
| Manslaughter | 86 | 37 | 43.0 | 12 | 14.0 | 0 | 0.0 | 0 | 0.0 | 4 | 4.7 | 33 | 38.4 |
| Money Laundering | 1,311 | 320 | 24.4 | 3 | 0.2 | 342 | 26.1 | 19 | 1.4 | 80 | 6.1 | 547 | 41.7 |
| Murder | 487 | 195 | 40.0 | 13 | 2.7 | 105 | 21.6 | 1 | 0.2 | 19 | 3.9 | 154 | 31.6 |
| National Defense | 231 | 88 | 38.1 | 0 | 0.0 | 28 | 12.1 | 3 | 1.3 | 15 | 6.5 | 97 | 42.0 |
| Obscenity/Other Sex Offenses | 325 | 166 | 51.1 | 2 | 0.6 | 1 | 0.3 | 0 | 0.0 | 15 | 4.6 | 141 | 43.4 |
| Prison Offenses | 451 | 269 | 59.6 | 2 | 0.4 | 2 | 0.4 | 0 | 0.0 | 21 | 4.7 | 157 | 34.8 |
| Robbery | 1,501 | 597 | 39.8 | 14 | 0.9 | 174 | 11.6 | 3 | 0.2 | 51 | 3.4 | 662 | 44.1 |
| Sexual Abuse | 1,393 | 538 | 38.6 | 17 | 1.2 | 72 | 5.2 | 0 | 0.0 | 74 | 5.3 | 692 | 49.7 |
| Stalking/Harassing | 239 | 101 | 42.3 | 4 | 1.7 | 4 | 1.7 | 0 | 0.0 | 20 | 8.4 | 110 | 46.0 |
| Tax | 446 | 74 | 16.6 | 0 | 0.0 | 44 | 9.9 | 0 | 0.0 | 20 | 4.5 | 308 | 69.1 |
| Other | 836 | 650 | 77.8 | 0 | 0.0 | 2 | 0.2 | 0 | 0.0 | 1 | 0.1 | 183 | 21.9 |

[1] Of the 64,124 cases, 312 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range. Descriptions of variables used in this table are provided in Appendix A.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.

## Table 32

**SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE BY PRIMARY SENTENCING GUIDELINE[1]**
**Fiscal Year 2023**

| Guideline | Total | Within Guideline Range | Up | §5K1.1 | §5K3.1 | Down | Variance | Guideline | Total | Within Guideline Range | Up | §5K1.1 | §5K3.1 | Down | Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| §2A1.1 | 337 | 135 | 3 | 87 | 1 | 15 | 96 | §2D1.8 | 15 | 3 | 0 | 4 | 1 | 3 | 4 |
| §2A1.2 | 109 | 49 | 10 | 9 | 0 | 2 | 39 | §2D1.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A1.3 | 43 | 19 | 10 | 0 | 0 | 2 | 12 | §2D1.10 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| §2A1.4 | 42 | 18 | 2 | 0 | 0 | 2 | 20 | §2D1.11 | 2 | 0 | 0 | 0 | 0 | 0 | 2 |
| §2A1.5 | 23 | 5 | 0 | 5 | 0 | 1 | 12 | §2D1.12 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| §2A2.1 | 201 | 79 | 2 | 22 | 0 | 8 | 90 | §2D1.13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A2.2 | 525 | 226 | 14 | 11 | 1 | 51 | 222 | §2D1.14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A2.3 | 61 | 42 | 1 | 0 | 0 | 4 | 14 | §2D2.1 | 78 | 67 | 1 | 1 | 0 | 0 | 9 |
| §2A2.4 | 245 | 140 | 3 | 1 | 0 | 16 | 85 | §2D2.2 | 40 | 33 | 0 | 1 | 0 | 0 | 6 |
| §2A3.1 | 133 | 46 | 3 | 4 | 0 | 15 | 65 | §2D2.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A3.2 | 43 | 21 | 2 | 1 | 0 | 3 | 16 | §2D3.1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| §2A3.3 | 3 | 1 | 0 | 0 | 0 | 0 | 2 | §2D3.2 | 3 | 3 | 0 | 0 | 0 | 0 | 0 |
| §2A3.4 | 46 | 23 | 2 | 0 | 0 | 1 | 20 | §2D3.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A3.5 | 282 | 147 | 0 | 1 | 0 | 15 | 119 | §2D3.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A4.1 | 141 | 41 | 3 | -41 | 0 | 14 | 42 | §2D3.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A4.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2E1.1 | 47 | 13 | 0 | 7 | 0 | 3 | 24 |
| §2A5.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2E1.2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| §2A5.2 | 20 | 12 | 0 | 0 | 0 | 0 | 8 | §2E1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A5.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2E1.4 | 6 | 2 | 0 | 0 | 0 | 0 | 4 |
| §2A6.1 | 162 | 78 | 1 | 1 | 0 | 12 | 70 | §2E1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2A6.2 | 74 | 23 | 3 | 3 | 0 | 8 | 37 | §2E2.1 | 9 | 2 | 0 | 2 | 0 | 0 | 5 |
| §2B1.1 | 4,896 | 1,818 | 22 | 751 | 3 | 144 | 2,158 | §2E3.1 | 64 | 17 | 3 | 10 | 0 | 8 | 26 |
| §2B1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2E3.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2E3.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B1.4 | 13 | 1 | 0 | 1 | 0 | 0 | 11 | §2E4.1 | 11 | 0 | 0 | 5 | 0 | 1 | 5 |
| §2B1.5 | 12 | 6 | 0 | 1 | 0 | 0 | 5 | §2E5.1 | 9 | 1 | 0 | 0 | 0 | 0 | 8 |
| §2B1.6[2] | 65 | 61 | 0 | 4 | 0 | 0 | 0 | §2E5.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B2.1 | 48 | 25 | 2 | 3 | 0 | 1 | 17 | §2E5.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B2.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2E5.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B2.3 | 33 | 29 | 0 | 0 | 0 | 1 | 3 | §2E5.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B3.1 | 1,489 | 593 | 14 | 173 | 3 | 50 | 656 | §2E5.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B3.2 | 31 | 6 | 0 | 2 | 1 | 1 | 21 | §2F1.1 | 2 | 1 | 0 | 0 | 0 | 0 | 1 |
| §2B3.3 | 10 | 3 | 0 | 0 | 0 | 1 | 6 | §2F1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B4.1 | 112 | 25 | 0 | 46 | 0 | 3 | 38 | §2G1.1 | 46 | 13 | 2 | 7 | 0 | 2 | 22 |
| §2B5.1 | 67 | 32 | 0 | 5 | 0 | 3 | 27 | §2G1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2B5.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2G1.3 | 414 | 179 | 3 | 36 | 0 | 13 | 183 |
| §2B5.3 | 44 | 10 | 0 | 10 | 0 | 1 | 23 | §2G2.1 | 710 | 254 | 6 | 18 | 0 | 40 | 392 |
| §2B5.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2G2.2 | 1,406 | 482 | 4 | 32 | 2 | 47 | 839 |
| §2B6.1 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | §2G2.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2C1.1 | 226 | 45 | 0 | 73 | 0 | 9 | 99 | §2G2.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2C1.2 | 12 | 4 | 0 | 2 | 0 | 0 | 6 | §2G2.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2C1.3 | 7 | 7 | 0 | 0 | 0 | 0 | 0 | §2G2.6 | 11 | 3 | 0 | 6 | 0 | 0 | 2 |
| §2C1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2G3.1 | 41 | 18 | 2 | 0 | 0 | 0 | 21 |
| §2C1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2G3.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2C1.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2H1.1 | 69 | 16 | 0 | 8 | 0 | 6 | 39 |
| §2C1.7 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | §2H1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2C1.8 | 7 | 3 | 0 | 2 | 0 | 0 | 2 | §2H1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2D1.1 | 18,635 | 4,915 | 59 | 3,918 | 1,236 | 836 | 7,671 | §2H1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2D1.2 | 276 | 117 | 0 | 17 | 0 | 43 | 99 | §2H1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2D1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2H2.1 | 8 | 2 | 0 | 3 | 0 | 0 | 3 |
| §2D1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2H3.1 | 10 | 5 | 0 | 3 | 0 | 0 | 2 |
| §2D1.5 | 7 | 4 | 0 | 3 | 0 | 0 | 0 | §2H3.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2D1.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2H3.3 | 6 | 6 | 0 | 0 | 0 | 0 | 0 |
| §2D1.7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2H4.1 | 16 | 7 | 0 | 2 | 0 | 0 | 7 |

## Table 32 (cont.)

| Guideline | Total | Within Guideline Range | Up | §5K1.1 | §5K3.1 | Down | Variance | Guideline | Total | Within Guideline Range | Up | §5K1.1 | §5K3.1 | Down | Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| §2H4.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2M5.2 | 168 | 58 | 0 | 19 | 3 | 13 | 75 |
| §2J1.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2M5.3 | 21 | 3 | 0 | 3 | 0 | 0 | 15 |
| §2J1.2 | 163 | 51 | 10 | 8 | 0 | 3 | 91 | §2M6.1 | 3 | 1 | 0 | 0 | 0 | 1 | 1 |
| §2J1.3 | 15 | 4 | 0 | 0 | 0 | 0 | 11 | §2M6.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2J1.4 | 9 | 8 | 0 | 0 | 0 | 0 | 1 | §2N1.1 | 19 | 0 | 0 | 1 | 0 | 1 | 17 |
| §2J1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2N1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2J1.6 | 31 | 18 | 0 | 0 | 0 | 3 | 10 | §2N1.3 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| §2J1.7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2N2.1 | 25 | 23 | 0 | 0 | 0 | 0 | 2 |
| §2J1.8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2N3.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2J1.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2P1.1 | 302 | 202 | 2 | 2 | 0 | 10 | 86 |
| §2K1.1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | §2P1.2 | 97 | 49 | 0 | 0 | 0 | 1 | 47 |
| §2K1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2P1.3 | 6 | 3 | 0 | 0 | 0 | 0 | 3 |
| §2K1.3 | 20 | 5 | 0 | 3 | 0 | 0 | 12 | §2P1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K1.4 | 105 | 48 | 6 | 14 | 0 | 5 | 32 | §2Q1.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K1.5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | §2Q1.2 | 31 | 10 | 0 | 3 | 0 | 1 | 17 |
| §2K1.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2Q1.3 | 9 | 4 | 0 | 1 | 0 | 0 | 4 |
| §2K1.7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2Q1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K2.1 | 8,388 | 4,129 | 66 | 428 | 13 | 288 | 3,464 | §2Q1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K2.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2Q1.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K2.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2Q2.1 | 79 | 53 | 0 | 6 | 0 | 2 | 18 |
| §2K2.4[3] | 334 | 269 | 7 | 21 | 0 | 0 | 37 | §2Q2.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K2.5 | 21 | 11 | 3 | 0 | 0 | 0 | 7 | §2R1.1 | 17 | 3 | 0 | 8 | 0 | 2 | 4 |
| §2K2.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2S1.1 | 1,132 | 240 | 0 | 325 | 18 | 63 | 486 |
| §2K3.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2S1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2K3.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2S1.3 | 171 | 78 | 3 | 17 | 1 | 15 | 57 |
| §2L1.1 | 4,731 | 1,894 | 8 | 150 | 1,920 | 92 | 667 | §2S1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2L1.2 | 12,867 | 7,885 | 28 | 29 | 2,897 | 460 | 1,568 | §2T1.1 | 237 | 38 | 0 | 21 | 0 | 9 | 169 |
| §2L1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T1.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2L2.1 | 69 | 29 | 0 | 12 | 1 | 0 | 27 | §2T1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2L2.2 | 437 | 319 | 2 | 0 | 2 | 9 | 105 | §2T1.4 | 126 | 22 | 0 | 18 | 0 | 3 | 83 |
| §2L2.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2L2.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T1.6 | 70 | 11 | 0 | 3 | 0 | 8 | 48 |
| §2L2.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T1.7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M1.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T1.8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M2.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T1.9 | 3 | 0 | 0 | 1 | 0 | 0 | 2 |
| §2M2.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T2.1 | 2 | 0 | 0 | 1 | 0 | 0 | 1 |
| §2M2.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T2.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M2.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T3.1 | 7 | 3 | 0 | 0 | 0 | 0 | 4 |
| §2M3.1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | §2T3.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M3.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2T4.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M3.3 | 3 | 2 | 0 | 0 | 0 | 0 | 1 | §2X1.1 | 20 | 11 | 0 | 1 | 0 | 2 | 6 |
| §2M3.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X2.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M3.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X3.1 | 82 | 20 | 0 | 17 | 0 | 2 | 43 |
| §2M3.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X4.1 | 151 | 59 | 1 | 17 | 2 | 5 | 67 |
| §2M3.7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X5.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M3.8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X5.2 | 338 | 186 | 0 | 0 | 0 | 0 | 152 |
| §2M3.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X6.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M4.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | §2X7.1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| §2M5.1 | 14 | 3 | 0 | 6 | 0 | 1 | 4 | §2X7.2 | 4 | 4 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | **TOTAL** | 61,842 | 25,701 | 313 | 6,477 | 6,105 | 2,384 | 20,862 |

[1] Of the 64,124 cases, 2,282 were excluded due to one or both of the following reasons: information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range (312) or missing guideline applied (2,250). Descriptions of variables used in this table are provided in Appendix A.

[2] In these cases, the sentenced individual was convicted of violating 18 U.S.C. § 1028A (Aggravated Identity Theft) as the only count or counts of conviction. The *Guidelines Manual* provides punishment for this type of offense under §2B1.6.

[3] In these cases, the sentenced individual was convicted of violating 18 U.S.C. § 924(c) (Use of Firearm, Armor-Piercing Ammunition, or Explosives During or in Relation to Certain Crimes) as the only count or counts of conviction. The *Guidelines Manual* provides punishment for this type of offense under §2K2.4.

SOURCE: U.S. Sentencing Commission, 2023 Datafile, USSCFY23.